**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BEARINGPOINT, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No. 07-631(C)**<br>**(Judge Wheeler)** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY FOR THE PURPOSE OF A REMAND TO THE GENERAL SERVICES ADMINISTRATION AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jonathan S. Aronie
SHEPPARD MULLIN RICHTER & HAMPTON LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Dated: October 30, 2007

Attorney for BearingPoint, Inc.

OF COUNSEL

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Domingo Maradiegue
BEARINGPOINT, INC.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................ 1

II. BACKGROUND ........................................ 2

III. SUMMARY JUDGMENT LEGAL STANDARD ........................................ 5

IV. ARGUMENT ........................................ 6

A. Remand To An Agency To Perform A "Pointless" Act Is Not Appropriate. ........ 6

B. The Improper Termination For Default Automatically Converted DOI's Action To A Termination For Convenience Entitling BearingPoint To Summary Judgment As A Matter Of Law. ........ 7

C. DOJ's Motion Ignores BearingPoint's Claims Of Breach, Added Work, And Fair Value Of Work Delivered And Accepted. ........ 9

D. Even Assuming, *Arguendo*, That GSA Has Jurisdiction, A Remand Would Still Be Inappropriate Under The Circumstances. ........ 10

1. There Is No Assurance That GSA Will Issue A Prompt Decision. ........ 10

2. The Government Has Actively Sought To Delay Issuing A Decision. ........ 11

3. DOJ's Assertion That A Remand Will Help Promote Settlement Ignores The History of This Case. ........ 12

E. The Case Cited By DOJ In Support Of Its Motion Is Inapposite. ........ 13

V. CONCLUSION ........................................ 14

## TABLE OF AUTHORITIES

**Cases**

Aerojet Gen. Corp., ASBCA No. 48136, January 24, 1995, 95-1 BCA ¶ 27,471 at 136,854 ...... 10

Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004) ...... 6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ...... 5

BearingPoint, Inc. v. United States, 77 Fed. Cl. 189 (2007) ...... 8

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...... 5

DeVito v. United States, 413 F.2d 1147 (Ct. Cl. 1969) ...... 12

Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n, 194 F.3d 72 (D.C. Cir. 1999) ...... 6

Finkelstein v. United States, 29 Fed. Cl. 611 (1993) ...... 5

Fischer Imaging Corp., VABCA No. 6125, Sept. 10, 2002, 02-2 BCA 32003 ...... 9

Hill v. United States, 945 F.2d 1529 (Fed. Cir. 1991), rev'd on other grounds, 506 U.S. 546 (1993) ...... 5

Int'l Tel. & Tel. Corp., ITT Comm. Div. v. United States, 509 F.2d 541 (Cl. Ct. 1975) ...... 7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ...... 6

NLRB v. Wyman-Gordon Co., 394 U.S. 759 (1969) ...... 6

Timberland Paving & Constr. Co. v. United States, 8 Cl. Ct. 653 (1985) ...... 7, 8

United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627 (2004) ...... 13

Yang Immigration and Naturalization Services, 109 F.3d 1185 (7th Cir. 1997) ...... 6

**Statutes**

RCFC 7(2)(a) ...... 1

RCFC 56(a) ...... 5

RCFC 56(c) ...... 1, 5

FAR 52.212-4 (m) ...... 8

## I. INTRODUCTION

Pursuant to Rules 7(2)(a) and 56(c) of the Rules of United States Court of Federal Claims, Plaintiff, BearingPoint, Inc., respectfully requests that Defendant's Motion to Stay for the Purpose of a Remand to the General Services Administration (the "Motion") be denied and that partial summary judgment be granted on the purely legal issue that DOI's September 2005 purported termination already has been converted into a termination for convenience as a matter of law.

Under the pretext of "efficiency," the Department of Justice ("DOJ") argues that the General Services Administration ("GSA") should be given at least another two months to decide whether the actions of the U.S. Department of Interior ("DOI") back in September 2005 were proper. DOJ's Motion, however, ignores the fact that, at the very heart of BearingPoint's Complaint, is the legal question of *whether this matter is properly before the GSA in the first place*.

BearingPoint consistently has contended that DOI's September 2005 purported termination already has been converted into a termination for convenience as a matter of law. It simply makes no sense – and certainly conserves no resources – for GSA and the parties to spend countless hours briefing, discussing, arguing, and trying to resolve an issue that will be mooted by this Court's ultimate ruling on a foundational legal principle. Because this is a purely legal issue, and could result in a more efficient use of the Court's and parties' resources, it is ripe for summary judgment disposition.

Even without a motion for summary judgment, however, DOJ's Motion to stay and remand still is inappropriate. DOJ's contention that a stay would promote efficiency is belied by the Government's own conduct. More than two years already have passed from DOI's Cure Notice and purported default actions. Approximately 17 months have passed since BearingPoint

filed its certified claim containing detailed support for its assertions of Government delay. More than 6 months have elapsed since the Court's April 2007 decision rejecting DOI's purported terminations. In this setting, the Government's plea for "efficiency" rings hollow. More than enough time has lapsed for the Contracting Officer to render a decision. Indeed, typically an evaluation of a contractor's claim of excusability and a decision on default is rendered within a matter of days or weeks, not months.

Further, as explained in greater detail below, DOJ's motion ignores the fact that, in addition to the termination conversion claim, BearingPoint properly has asserted claims for breach of contract, added work, and the fair value of work delivered and accepted. These claims were brought before the DOI contracting officer and denied, and are, therefore, appropriately before this Court. These claims are also wholly independent of any decision that might be made regarding excusability. As set forth below, these claims could (and should) proceed even assuming, *arguendo*, that it would be appropriate for the Court to grant a stay to permit GSA to consider the issue of excusable delay.

## II. BACKGROUND

On September 29, 2005 and October 27, 2005, DOI purported to terminate for default Task Order 3 and the Blanket Purchase Agreement ("BPA") under which that Task Order was awarded. BearingPoint appealed the terminations to the Court of Federal Claims on September 26, 2006. Based on the absence of a valid Contracting Officer's decision with respect to both terminations, BearingPoint filed a motion to dismiss its own Complaint under RCFC 12(b)(1) on January 19, 2007.

The Court issued its decision dismissing BearingPoint's Complaint for lack of subject matter jurisdiction on April 30, 2007. In its decision, the Court held, among other things, that the DOI contracting officer lacked the authority to issue the termination decisions, and, as a result,

DOI's purported terminations were "jurisdictionally invalid" and to be "treated as 'legal nullities.'" Accordingly, as requested by BearingPoint, the Court dismissed the Complaint for lack of subject matter jurisdiction. The Court issued a clarification Order on May 15, 2007, which noted that its April 2007 Opinion and Order did not reach "the merits of whether the BPA and Task Order 3 are still in effect or may have expired for some other reason."

On July 28, 2006, BearingPoint filed a certified claim with DOI and GSA requesting compensation for added work performed under Task Order 3, breach of contract damages caused by DOI's ending BearingPoint's ability to continue work, and, in the alternative, constructive termination for convenience and a claim for the fair value of work performed by BearingPoint, delivered to DOI, and accepted by DOI. The July 28 certified claim included three volumes of supporting documentation related to DOI's improper conduct, including substantial evidence related to excusable delay. That certified claim was rejected by DOI in a Final Decision dated January 16, 2007.

In June 2007 – nearly a year after BearingPoint filed its certified claim – GSA requested that BearingPoint provide it with documents that supported its claims of excusable delay. BearingPoint promptly provided GSA with another copy of its certified claim, and the accompanying index and exhibits. Subsequently, on August, 15, 2007, the GSA Contracting Officer requested that BearingPoint prepare a summary of BearingPoint's excusable delay claims. BearingPoint again responded promptly, providing GSA with a PowerPoint presentation on August 31, 2007 that gave a high-level summary of its claim. BearingPoint expressly cautioned GSA not to deem its summary as a substitute for the material contained in, and attached to, the certified claim.

On August 24, 2007, BearingPoint filed the present action against DOI. Among other things, BearingPoint alleged that DOI's decision back in September 2005 to preclude the company from performing further work on the FBMS contract, and its concurrent decision purporting to terminate the contract for default, either (a) breached the contract and/or (b) effected a termination for convenience of the contract. BearingPoint also asserted claims for added work and for the value of Task Order 3 work delivered to, and accepted by, DOI. BearingPoint argued that, even if the terminations had been valid (and even if GSA were now to deny BearingPoint's claims of excusable delay), the company is still entitled to recover the value of the Task Order 3 work accomplished, including the work in process. It is undisputed that DOI demanded that BearingPoint turn over its work in process at the time of the purported termination of Task Order 3, and that BearingPoint compiled with that direction.

With respect to the purported default terminations, BearingPoint argued that this Court's decision in April 2007 that the DOI lacked the authority to terminate BearingPoint – and that the purported terminations for default consequently were invalid – automatically converted those terminations into ones for the Government's convenience.

Rather than answering BearingPoint's complaint, the DOJ moved this Court on October 18, 2007 to stay the Complaint and remand the matter to the GSA. DOJ represents in its Motion that, despite having all of the requisite information to issue its decision, GSA only "anticipates" issuing a ruling by December 18, 2007 – a full 17 months after BearingPoint filed its certified claim with supporting documentation on excusable delay, and more than two years after DOI's purported termination. In its Motion, DOJ contends that a remand to GSA is necessary "to promote judicial efficiency." As set forth below, remand is not appropriate. Rather,

BearingPoint is entitled to partial summary judgment on the legal issue of conversion of an improper termination for default to a termination for convenience.

## III. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). A claimant may file a motion for summary judgment "at any time after the expiration of 60 days from the commencement of the action . . . with or without supporting affidavits." See RCFC 56(a). Summary judgment is appropriate where, as here, a claim involves a purely legal issue. Hill v. United States, 945 F.2d 1529, 1530 (Fed. Cir. 1991), rev'd on other grounds, 506 U.S. 546, 113 S. Ct. 941 (1993) (summary judgment appropriate because "case turns on a legal issue--the proper interpretation of the pertinent statutes and regulations."); Finkelstein v. United States, 29 Fed. Cl. 611, 617 (1993) ("legal issues of statutory and regulatory interpretation are amenable to resolution by summary judgment.") (citation omitted).

In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact; once this burden is met, in order to defeat summary judgment, the non-moving party must present evidence which demonstrates such a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986). In determining whether a genuine issue of material fact exists, the court must consider the evidence and resolve all doubts in the light most favorable to the non-moving party. Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004).

## IV. ARGUMENT

### A. Remand To An Agency To Perform A "Pointless" Act Is Not Appropriate.

The Government contends that a remand would promote efficiency because GSA has already begun to consider the merits of BearingPoint's excusability claim. See Mot. at 6-7. However, it is inappropriate (and inefficient) to issue a stay for the purpose of allowing GSA to consider a matter that is no longer a "live" controversy.

As set forth in Section II, *infra*, DOI's improper termination for default in September 2005 already automatically converted DOI's action into a termination for convenience. As a result, there is no excusability claim left for GSA to consider, and a remand would only result in the parties wasting countless additional hours briefing, discussing, arguing, and trying to resolve an issue that is already moot.

Because GSA has no role to play in this matter, a stay would result only in an inefficient use of the parties' time and resources to engage in an irrelevant exercise. Courts routinely decline to remand cases where, as here, such an action "would be an idle and useless formality." See NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766 n.6 (1969); see also Yang v. Immigration and Naturalization Services, 109 F.3d 1185, 1194 (7th Cir. 1997) ("it is pointless to remand if it is clear what the agency decision must be") (internal quotations and citations omitted); Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n, 194 F.3d 72, 79 (D.C. Cir. 1999) (finding remand unnecessary where the outcome of the proceeding is preordained).

If a stay is ultimately issued, and GSA is permitted to proceed in its current endeavor, it could issue a decision only subsequently to be told that it had no authority to issue such a decision in the first place because the termination already had been resolved as a matter of law.

Such an outcome hardly would result in the efficient use of resources that DOJ contends it seeks. Because an order remanding this matter for consideration by GSA would be a "useless exercise," DOJ's motion should be denied.

**B. The Improper Termination For Default Automatically Converted DOI's Action To A Termination For Convenience, Entitling BearingPoint To Summary Judgment As A Matter Of Law.**

It is well established that a procedurally defective, unauthorized termination for default results in a termination for convenience. See, e.g., Int'l Tel. & Tel. Corp., ITT Comm. Div. v. United States, 509 F.2d 541 (Cl. Ct. 1975); Timberland Paving & Constr. Co. v. United States, 8 Cl. Ct. 653 (1985). In International Telephone and Telegraph, for example, the Claims Court, the predecessor to the Court of Federal Claims, held that a purported termination for default resulted in a termination for convenience where, as here, "the Government[] [failed] to follow proper procedures in its default attempts." 509 F.2d at 553.

Similarly, in Timberland Paving, the court was confronted with a situation where, as here, the Contracting Officer who made the purported termination decision lacked the authority to do so. The court held that, as a result, "the purported termination of plaintiff's contract for default was invalid and of no legal force and effect. . . ." 8 Cl. Ct at 654. The court continued its analysis by noting that the contracting officer's "actions were not within [his] authority, when taken, and [were] null and void. . . ." Id. at 659. Consequently, the court concluded – without addressing the validity of the grounds for termination set forth in the termination notice – that the unauthorized termination for default resulted in a termination for convenience. Id. at 662 (remanding case to agency with "instructions to proceed promptly to determine the amount due plaintiff as if the . . . notice of termination for default issued to it had been issued pursuant to the contract clause providing for termination of the contract for the convenience of the government").

In this case, the Court already has concluded, in line with its prior decisions, that the DOI's purported terminations for cause were procedurally defective because the DOI Contracting Officer exceeded her authority by evaluating BearingPoint's allegations of excusable delay, rather than referring those allegations to BearingPoint's GSA Schedule Contracting Officer, as required. Compare Timberland Paving, 8 Cl. Ct. at 659 with BearingPoint, supra, at 195. Further, consistent with its precedent, the Court concluded that the DOI Contracting Officer's purported terminations for cause "shall be treated as legal nullities." Compare Timberland Paving, 8 Cl. Ct. at 659 with BearingPoint, supra, 77 Fed. Cl. at 195 . Accordingly, consistent with federal case law, the DOI Contracting Officer's purported terminations for cause were procedurally defective, unauthorized and invalid, and therefore resulted in terminations for convenience.

The moment the Court determined that the DOI contracting officer lacked authority to terminate BearingPoint's GSA Schedule contract, the purported terminations for cause converted to terminations for convenience by operation of law. In this regard, the termination for cause provision of BearingPoint's GSA Schedule Contract provides, in relevant part, as follows:

> If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

FAR 52.212-4 (m). There can be no dispute that the Court, in concluding that the DOI contracting officer lacked authority to terminate Task Order 3 and the BPA, "determined that the Government improperly terminated this contract for default." Id.; see also BearingPoint, supra, at 195. Accordingly, DOI's procedurally improper termination for cause "shall be deemed a termination for convenience" pursuant to FAR 52.212-4 (m).

There is simply no need for any additional findings or decisions on the part of the GSA Schedule Contracting Officer or anyone else. See, e.g., Fischer Imaging Corp., VABCA No.

6125, Sept. 10, 2002, 02-2 BCA 32003 ("*[B]y operation of the Contract clause at FAR 52.212-4(m)*, the termination for cause is converted to a termination for the Government convenience within the terms of the clause at FAR 52.212-4(l).") (emphasis added). Accordingly, summary judgment should be granted in favor of BearingPoint on this purely legal issue.

### C. DOJ's Motion Ignores BearingPoint's Claims Of Breach, Added Work, And Fair Value Of Work Delivered And Accepted.

DOJ's motion ignores the fact that BearingPoint submitted a certified claim to the DOI contracting officer, alleging, among other things, that (a) DOI breached its contract with BearingPoint by throwing it off the FBMS job site and precluding it from performing any further FBMS work, (b) that the fair value of the work DOI directed be delivered at the time of termination has a value of $19,842,777, and (c) DOI demanded that BearingPoint perform additional services prior to the purported termination for which it has not been paid. The DOI Contracting Officer denied these claims, as well as all of BearingPoint's associated monetary damage claims, on January 16, 2007. BearingPoint appealed these denials as part of its pending Complaint.

These claims, as well as the associated monetary damage claims, exist wholly independent of GSA and that agency has no role to play in the resolution of these claims under any circumstances. Moreover, none of these claims would be affected in any way, irrespective of how GSA may rule on the issue of excusable delay. For example, one of BearingPoint's breach claims alleges that, following issuance of the Task Order 3 Termination Notice, DOI ordered that BearingPoint immediately cease all work and vacate the project facilities. See Compl. ¶ 222. DOI's direction unreasonably interfered with BearingPoint's performance by rendering it impossible to continue work. Id. ¶ 223. GSA's decision regarding excusability has absolutely no bearing on whether this claim can proceed.

Likewise, BearingPoint's breach claim regarding added work does not first require a decision by GSA on excusability. That claim is based on the fact that BearingPoint was directed to perform work differently from that required by the contract, or was otherwise impeded in its performance by DOI. See Compl. ¶¶ 204-211. This claim, like the breach claim discussed above, could proceed even if the excusability claim were stayed, and would not result in any duplicative discovery or unnecessary burden to the Court or parties.

Nowhere in its Motion does the Government address why all of BearingPoint's claims should be stayed pending GSA's decision on one discrete issue. To the extent any stay is found warranted, which it is not, it should be limited only to BearingPoint's excusability claims, and GSA should be given no more than 30 days to issue its decision. GSA has had more than ample time, and all of the requisite information and documents, to consider the excusability issue.

## D. Even Assuming, *Arguendo*, That GSA Has Jurisdiction, A Remand Would Still Be Inappropriate Under The Circumstances.

### 1. *There Is No Assurance That GSA Will Issue A Prompt Decision.*

DOJ's position that a remand "would promote judicial efficiency" (see Mot. at 6) is belied by the fact that GSA has yet to set a firm deadline to issue its decision. In its Motion, DOJ is quite clear that there is only a possibility that GSA will issue a decision this year:

> GSA ***currently anticipates*** that it will issue a contracting officer's final decision regarding the termination of BearingPoint's contracts on December 18, 2007 (***possibly after*** conducting a meeting with BearingPoint and DOI).

See Mot. at 3 (emphasis added). It is apparent from DOJ's Motion that the December 18 deadline is speculative. By stating its anticipated deadline in conditional terms, GSA is, in effect, seeking to retain the discretion to withhold a prompt decision. Cf. Aerojet Gen. Corp., ASBCA No. 48136, January 24, 1995, 95-1 BCA ¶ 27,471 at 136,854 ("By couching the notice in these subjective and conditional terms and by failing to provide a specific time in the first

instances, the contracting officer, in effect, retained the discretion to withhold a decision indefinitely. This violated both the letter and the spirit of the [CDA].").

Under the circumstances, a stay cannot properly be characterized as promoting efficiency. If the Government truly were serious about promoting efficiency, it would have already issued its decision or, at the very least, would have provided BearingPoint with a firm decision date. At the moment, with no pending deadline, a remand would only cause further delay and likely would result in subsequent motions practice with the Court when no decision is timely issued.

**2. *The Government Has Actively Sought To Delay Issuing A Decision.***

DOJ's contention that the Government has "worked diligently" on this matter is inaccurate and irrelevant. DOI and GSA have had BearingPoint's certified claim with its supporting documentation since July 2006. If the Government wanted to be efficient, it could have reviewed that material upon receipt or, at a minimum, immediately upon the issuance of the Court's opinion in April 2007. Even after the Court issued its decision in April 2007, however, the Government continued to drag its heels. First, in June 2007, GSA requested documentation from BearingPoint – documentation it *already possessed.* BearingPoint again provided GSA with its certified claim and all of the accompanying documents.

Then, on August 15, 2007, GSA requested a summary of BearingPoint's claim, which the company provided to the agency in the form of a PowerPoint presentation.[1] GSA still did not issue a decision. It is important to note that six months have passed since the Court issued its decision. Six months to issue an opinion on excusable delay in a default termination context is

---

[1] It is also worth noting that in each instance that it responded to GSA, BearingPoint expressly reminded the agency that the agency had no authority to insert itself into this matter and that the company's submission was in the spirit of cooperation and the hope for a speedy resolution, not a concession that GSA had authority to issue a decision.

an unreasonable length of time. The fact that the decision is two years removed from BearingPoint's reply to DOI's Cure Notice renders the time grossly unreasonable. Cf. DeVito v. United States, 413 F.2d 1147 (Ct. Cl. 1969).

Now, more than six months after the Court's decision, and more than two years from BearingPoint's reply to the Cure Notice, DOJ represents for the first time in its Motion that GSA does not "anticipate" issuing a final decision until December 18, 2007. See Mot. at 3. DOI and GSA have had all of the requisite materials from BearingPoint for quite some time. Considering their position that there actually exists something for GSA to rule on at this point (a position obviously with which BearingPoint disagrees), their failure to diligently address the excusable delay issue and render a decision is notable. This matter should not be further delayed in the hope that an irrelevant decision "may" be issued in another two months.

### 3. *DOJ's Assertion That A Remand Will Help Promote Settlement Ignores The History of This Case.*

DOJ suggests that a remand is appropriate here to help promote the policy goal of "induc[ing] the administrative resolution of contract disputes prior to litigation." See Mot. at 8. While BearingPoint has demonstrated its interest in working toward this goal since the beginning of this dispute, the conduct of the Government demonstrates that, without court involvement, this goal will remain elusive. To date, BearingPoint has done everything possible to foster a settlement, including participation in numerous conferences, without the parties reaching any resolution of the issues and, indeed, without receiving any meaningful response to its settlement discussions. At this point, because of the parties' irreconcilable views of the issues in the case, it is unrealistic to expect that any productive settlement discussions would occur prior to a decision by GSA and without further involvement by the Court.

### E. The Case Cited By DOJ In Support Of Its Motion Is Inapposite.

In its Motion, DOJ relies on one case, the Court's decision in United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627 (2004). United Partition, however, is inapposite to the case at bar. First, in United Partition, the plaintiff, not the government, had filed an *unopposed* motion to stay. Id. at 633. Second, the unopposed motion to stay already had been granted and was not the subject of this decision. Id. Third, and most importantly, the general grounds noted by the Court in United Partition that constitute bases for issuing a stay (*i.e.*, that it "be beneficial to the parties and assist in the resolution of the matter") are not present in this case.[2] Indeed, as set forth in detail above, a remand would subject the parties to the very real possibility of spending countless hours working to resolve an issue that will only subsequently be mooted by a ruling from the Court on a foundational legal principle. Moreover, a remand likely only would result in a continuing unreasonable delay. It has been two years since DOI issued its Cure Notice and six months since this Court issued its decision. There is no reason to continue that delay only for the "hope" that GSA will issue in two months what is, in fact, an irrelevant decision.

---

[2] It is worth noting that the termination for default clause at issue in United Partition is the standard clause, *not* the commercial termination clause that is in BearingPoint's contract, which makes the remand in that case more consistent with the contract provisions applicable there and even less relevant to the pending matter.

## V. CONCLUSION

For the foregoing reasons, BearingPoint respectfully requests that this Court deny DOJ's Motion and grant partial summary judgment in favor of BearingPoint.

Respectfully submitted,

/s/ Jonathan S. Aronie

Jonathan S. Aronie
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Date: October 30, 2007

Attorney for BearingPoint, Inc.

Of Counsel:

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Domingo Maradiegue
BEARINGPOINT, INC.

**CERTIFICATE OF FILING**

I hereby certify that on October 30, 2007, a copy of "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STAY FOR THE PURPOSE OF A REMAND TO THE GENERAL SERVICES ADMINISTRATION AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notices of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan S. Aronie
JONATHAN S. ARONIE
ATTORNEY FOR BEARINGPOINT, INC.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BEARINGPOINT, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No. 07-631(C)**<br>**(Judge Wheeler)** |

**ORDER**

Having considered the Defendant's Motion to Stay for the Purpose of a Remand to the General Services Administration, Plaintiff's Opposition thereto and Cross Motion for Partial Summary Judgment, and all other pleadings and documents properly before this Court, it is hereby

ORDERED that the Defendant's Motion to Stay is DENIED, and it is further

ORDERED that the Plaintiff's Cross Motion for Partial Summary Judgment is GRANTED and the U.S. Department of Interior's improper terminations of BearingPoint's Blanket Purchase Agreement No. 73873 and Task Order 3 have been converted into a termination for convenience.

Dated this ____ day of ____________________, 2007.

BY THE COURT:

______________________________
THOMAS C. WHEELER, JUDGE
U.S. COURT OF FEDERAL CLAIMS