# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**BEARINGPOINT, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

**Case No. 07-631(C)**
**(Judge Wheeler)**

## PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

In support of its Cross Motion for Partial Summary Judgment, Plaintiff BearingPoint, Inc. ("BearingPoint") respectfully submits the following proposed uncontroverted facts:

1. On January 5, 2004, the United States Department of the Interior ("DOI") awarded Blanket Purchase Agreement ("BPA") No. 73873 to BearingPoint for the Financial and Business Management System ("FBMS") project. See FBMS BPA, attached hereto as Exhibit 1. The award document was designated by DOI as a General Services Administration ("GSA") Schedule "Blanket Purchase Agreement," and prepared by DOI using GSA's standard Schedule BPA template. Id.

2. The BPA, together with the BearingPoint GSA 70 Schedule Contract, incorporated the following relevant terms and conditions:

> (m) Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. *If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.*

See BearingPoint GSA 70 Schedule Contract excerpt, attached hereto as Exhibit 2, at page 20 of 142 (emphasis added); see also Exhibit 1 at 1.

3. Task Order 3 (Order No. 0404DO37408) was issued to BearingPoint on September 20, 2004. See Task Order 3, attached hereto as Exhibit 3.

4. DOI issued a notice of termination to BearingPoint on September 29, 2005, which purported to terminate for default Task Order 3. See Task Order 3 Termination Notice, attached hereto as Exhibit 4.

5. DOI issued a second notice of termination to BearingPoint on October 27, 2005 that purported to terminate for default the BPA under which Task Order 3 was awarded. See BPA Termination Notice, attached hereto as Exhibit 5.

6. BearingPoint appealed DOI's terminations to the Court of Federal Claims on September 26, 2006. See BearingPoint, Inc. v. United States, 77 Fed. Cl. 189 (2007), attached hereto as Exhibit 6. Based on the absence of a valid Contracting Officer's decision with respect to each termination, BearingPoint filed a motion to dismiss its own Complaint under RCFC 12(b)(1) on January 19, 2007. Id. at 189.

7. The Court issued its decision dismissing BearingPoint's Complaint for lack of subject matter jurisdiction on April 30, 2007. See Exhibit 6 (BearingPoint, Inc., 77 Fed. Cl. at 195). In its decision, the Court held, among other things, that the DOI contracting officer lacked the authority to issue the termination decision, and, as a result, DOI's purported terminations were "jurisdictionally invalid" and to be "treated as 'legal nullities.'" Id. Accordingly, as requested by BearingPoint, the Court dismissed the Complaint for lack of subject matter jurisdiction. Id.

Respectfully submitted,

/s/ Jonathan S. Aronie

Jonathan S. Aronie
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Attorney for BearingPoint, Inc.

Date: October 30, 2007

Of Counsel:

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Domingo Maradiegue
BEARINGPOINT, INC.

**CERTIFICATE OF FILING**

I hereby certify that on October 30, 2007, a copy of "PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS IN SUPPORT OF ITS CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notices of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan S. Aronie
JONATHAN S. ARONIE
ATTORNEY FOR BEARINGPOINT, INC.

# EXHIBIT 1

1

# BEST VALUE
# BLANKET PURCHASE AGREEMENT
# FEDERAL SUPPLY SCHEDULE

**GovWorks/Department of the Interior**

**BPA # 73873**

This BPA is awarded in accordance with Solicitation no. 73873 that was issued on August 7, 2003.

FSC Group 70

Schedule Contract no. GS-35F-4338D

Including all discounts as provided for under Bearing Point submission dated October 10, 2003.

In the spirit of the Federal Acquisition Streamlining Act, GovWorks, the Department of the Interior and Bearing Point enter into a Blanket Purchase Agreement to further reduce the administrative costs of acquiring commercial items from the General Services Administration (GSA) Federal Supply Schedule Contract GS-35F-4338D.

This Blanket Purchase Agreement (BPA) includes the original quote presented by Bearing Point dated October 10, 2003 (both Business and Technical/Management quotations). This agreement also includes all issues documented by Bearing Point in their oral presentation of November 3, 2003. The answers to the Government questions dated November 13, 2003, December 19, 2003, December 23, 2003, December 31, 2003 and January 5, 2004 also become part of this BPA.

Federal Supply Schedule contract BPAs eliminate contracting and open market costs such as: the search for sources; the development of technical documents and solicitations; and the evaluation of bids and offers. Contractor Team Arrangements are permitted with Federal Supply Schedule contractors in accordance with Federal Acquisition Regulation (FAR) Part 8.

This BPA will further decrease costs, reduce paperwork and save time by eliminating the need for repetitive, individual purchases from the Schedule contract. The end result is to create a purchasing mechanism for the **Government that works better and costs less.**

Signatures:

James E. MacKay 1/05/04 — CONTRACTING OFFICER
GovWorks/Department of the Interior DATE

[signature] 01/05/04
Bearing Point DATE
Susan E. Weeks

James E. MacKay

GovWorks/Department of the Interior
BLANKET PURCHASE AGREEMENT

Pursuant to GSA Federal Supply Schedule Contract NumberGS-35F-4338D, Blanket Purchase Agreements, the Contractor agrees to the following terms of a Blanket Purchase Agreement (BPA) EXCLUSIVELY WITH Department of the Interior/GovWorks. All orders placed against this BPA are subject to the terms and conditions of the GSA Schedule Contract, except as noted below:

(1) Contract Services:

**Service**

Any and all labor category service contained under Bearing Point's GSA Schedule Contract Number GS-35F-4338D.

**Total Number of Labor Hours:** Est. 514,231.2

**Discounts:**
Labor Escalation -- Maximum yearly dollar rate 2%
Discounts offered over GSA Schedule 10% (general), 16.67% - 33.33% (incremental)
Total Estimated Cost $124,939,133.00

These discount levels do not preclude Bearing Point from offering nor the Government from asking for further price reductions in accordance with commercial practice, market forces and volume buying at the time of placing Task Orders against this BPA. Any travel required of Bearing Point will be pre-authorized by the Government and reimbursed according to the Government's Joint Travel Regulations.

'ished Federal Government per diem rates will apply to Contractor travel.

(2) Delivery/Destination/Schedule/Dates:

Delivery, destination, and schedule dates will be specified under each Task Order against this BPA.

(3) The Government estimates, but does NOT guarantee, that the volume of purchases through this agreement will be $20,000,000.

(4) This BPA does not obligate any funds.

(5) The following individual is hereby authorized to place orders under this BPA:

| OFFICE | POINT OF CONTACT |
|---|---|
| GovWorks | James E. MacKay, Contract Officer<br>381 Elden St, MS 2500<br>Herndon, VA 22080<br>Phone: 703-787-1351, Fax: 703-787-1009 |

'ders will be placed against this BPA via Electronic Data Interchange (EDI), FAX, paper, or oral communications.

(7) Unless otherwise agreed to, all invoices under this BPA must be accompanied by delivery tickets or sales slips that must contain the following information as a minimum:

(a) Name of Contractor;

(b) GSA Schedule Contract Number – GS-35F-4338D;

(c) BPA Number – 73873;

(d) Task Order Number;

(e) Date of Task Order;

(f) Quantity, Unit Price, and Extension of Each Item (unit prices and extensions need not be shown when incompatible with the use of automated systems; provided, that the invoice is itemized to show the information);

(g) Date of Performance

(h) Place of Delivery; and

(i) Delivery Point of Contact

(8) The requirements of a proper invoice are as specified in the Federal Supply Schedule contract. Invoices will be submitted to the address specified within the task/delivery order transmission issued against this BPA.

(9) The terms and conditions included in this BPA apply to all Task Orders made pursuant to it. In the event of an inconsistency between the provisions of this BPA and the Contractor's invoice, the provisions of this BPA will take precedence.

(10) Period of Performance: This BPA # 73873 is for (1) one base year from date of award with (9) option years.

(11) The COTR on Task Orders under this BPA is Sky Lesher (co-program manager). Phone: 202-439-7450; Fax: 202-219-4244, email: rslesher@aol.com.

# EXHIBIT 2

Solicitation No. FCIS-JB-980001B - Refresh #3

# FEDERAL SUPPLY SCHEDULE FOR GENERAL PURPOSE COMMERCIAL INFORMATION TECHNOLOGY EQUIPMENT, SOFTWARE, AND SERVICES FSC GROUP 70

NOTE 1: THIS IS **REFRESH NUMBER 3** OF SOLICITATION NUMBER FCIS-JB-980001B. IT IS STILL THE SAME SOLICITATION.

NOTE 2: HARDCOPY RESPONSES TO THIS ELECTRONICALLY AVAILIABLE SOLICITATION, AT A MINIMUM, MUST BE IN A FONT NO SMALLER THAN 10 CPI (characters per inch). REFER TO PARAGRAPH E.4 FOR MORE INFORMATION.

NOTE 3: SALES AND MAINTENANCE SERVICE MUST BE PROVIDED TO, AT A MINIMUM, THE 48 CONTIGUOUS STATES AND THE DISTRICT OF COLUMBIA

CONTRACT PERIOD: Contracts awarded under this standing solicitation will commence on the DATE OF AWARD and end five years from that date (unless contract is canceled/terminated or extended).

ANY INFORMATION THAT MAY BE DESIRED ON THIS PARTICULAR SOLICITATION CAN BE OBTAINED FROM THE ISSUING OFFICE ADDRESS SHOWN HEREIN. THE OFFER SHOULD BE SUBMITTED, IN DUPLICATE, TO THE FOLLOWING ADDRESS:

GSA/FSS
IT ACQUISITION CENTER
SOLICITATION NO. FCIS-JB-980001B
ATTN.: BOOCO, ROOM 1017
1941 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202

OFFERS MUST BE SIGNED IN BLOCK 30a OF THE STANDARD FORM 1449

Many of the provisions and clauses cited in this solicitation are incorporated by reference to the appropriate section of the Federal Acquisition Regulation (FAR) or the General Services Administration Acquisition Manual (GSAM). A review of these clauses and provisions will be necessary for you to understand all aspects of the solicitation. The full text of any FAR and GSAM clauses which are incorporated by reference in this solicitation may be found in the electronic file titled IBR.DOC or they can be accessed at the following URLs:

FAR: http://www.arnet.gov/far
GSAM: http://www.arnet.gov/GSAM/gsam.html

Copies of FAR may be purchased from: Superintendent of Documents
Government Printing Office (GPO)
Washington, DC 20402

**PREPARATION, SUBMISSION, AND NEGOTIATION OF SUBCONTRACTING PLANS (GSAR 552.219-72) (SEP 1999)**

(a) An offeror, other than a small business concern, submitting an offer that exceeds $500,000 ($1,000,000 for construction) shall submit a subcontracting plan with its initial offer. The subcontracting plan will be negotiated concurrently with price and any required technical and management proposals, unless the offeror submits a previously-approved commercial products plan.

SOLICITATION FCIS-JB-980001B – REFRESH #3



# SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS

*Offeror to complete blocks 12, 17, 23, 24, & 30*

1. REQUISITION NUMBER

PAGE 1 OF 138

2. CONTRACT NO. GS-35F-

3. AWARD/EFFECTIVE DATE

4. ORDER NUMBER

5. SOLICITATION NUMBER FCIS-JB-980001B -- REFRESH #3

6. SOLICITATION ISSUE DATE 3/23/98 #3 – 8/1/2001

7. FOR SOLICITATION INFORMATION CALL: A. NAME CONTRACT SPECIALIST

B. TELEPHONE NUMBER (No Collect Calls) 703/305-3038

8. OFFER DUE DATE/ NONE

9. ISSUED BY CODE 00166

GSA/FSS/FCI

IT ACQUISITION CENTER
CRYSTAL MALL #4, ROOM 1017
1941 JEFFERSON DAVIS HIGHWAY
ARLINGTON, VA 22202

ADDRESS OFFERS TO: SEE PARAGRAPH A.2

10. THIS ACQUISITION IS

X UNRESTRICTED

☐ SET-ASIDE % FOR
☐ SMALL BUSINESS
☐ SMALL DISADV. BUSINSESS
☐ 8(A)

SIC SEE A.3

SIZE STANDARD:

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
☐ SEE SCHEDULE

12. DISCOUNT TERMS

☐ 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING

14. METHOD OF SOLICITATION
☐ RFQ ☐ IFB X RFP ☐ RFP

15. DELIVER TO CODE

ORDERING AGENCY

16. ADMINSTERED BY CODE

SEE BLOCK 9

17a. CONTRACTOR/ CODE FACILITY

DUNS No.:

TELEPHONE NO>

☐ 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18a. PAYMENT WILL BE MADE BY CODE

ORDERING AGENCY

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED.
☐ SEE ADDENDUM

| 19. ITEM NO | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | *(Attach Additional Sheet as Necessary)* | | | | |

25. ACCOUNTING AND APPROPRIATION DATA

26. TOTAL AWARD AMOUNT (For Govt.Use Only)

☐ 27a. SOLICITATION INCORPORATE BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA

☐ 27b. CONTRACT/PURCHASE ORDER INCORPORATE BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA ☐ ARE ☐

28. ☐ CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN 2(TWO) COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

29. ☐ AWARD OF CONTRACT: REFERENCE OFFER DATED . YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER)

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT)

30c. DATE SIGNED

31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT)

31c. DATE SIGNED

32a. QUANTITY IN COLUMN 21 HAS BEEN
☐ RECEIVED ☐ INSPECTED ☐ ACCEPTED, AND CONFORMS TO THE CONTRACT EXCEPT AS NOTED

33. SHIP NUMBER
☐ PARTIAL ☐ FINAL

34. VOUCHER NUMBER

35. AMOUNT VERIFIED

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE

32c. DATE

36. PAYMENT
☐ COMPLETE ☐ PARTIAL ☐ FINAL

37. CHECK NUMBER

38. S/R ACCOUNT NUMBER

39. S/R VOUCHER NUMBER

40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER

41c. DATE

42a. RECEIVED BY (Print)

42b. RECEIVED AT (Location)

42c. DATE REC'D (YY/MM/DD)

42d. TOTAL CONTAINERS

AUTHORIZED FOR LOCAL REPRODUCTION

SEE REVERSE FOR OMB CONTROL NUMBER AND PAPERWORK BURDEN STATEMENT

STANDARD FORM 1449 (10-95)
PRESCRIBED BY GSA -- FAR (48 CFR) 53.212

| | |
|---|---|
| Public reporting burden for this collection of information is estimated to average 45 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, DC 20405. | OMB No.: 900<br>Expires: 09/3 |

## ACKNOWLEDGEMENT OF AMENDMENTS

Amendment #1 issued June 17, 1998 has been incorporated herein.

Amendment #2 issued February 23, 1999 has been incorporated herein.

Amendment #3 issued August 2, 1999 has been incorporated herein.

Amendment #4 issued May 4, 2000 has been incorporated herein.

Amendment #5 issued May 7, 2000 has been incorporated herein.

Solicitation Refresh #1 issued June 14, 2000, incorporating regulatory updates and all previously issued amendments.

Solicitation Refresh #2 issued October 30, 2000.

Solicitation Refresh #3 issued August 1, 2001.

## TABLE OF CONTENTS

A.1 Information Collection Requirements (A-FSS-40) (Nov 1999) ... 7
A.2 Address Offers To: (Block 9, Standard Form 1449) ... 7
A.3 North American Industry Classification System (NAICS)(X-FCI-XXX) ... 7

B.1 Estimated Sales (B-FSS-96) (Jul 2001) ... 10
B.2 Products and Services Offered/Schedule of Items (Blocks 19 & 20, Standard Form 1449) ... 10

C.1 Contract Terms and Conditions – Commercial Items (FAR 52.212-4) (May 2001) (Tailored) ... 19
C.2 Clauses Incorporated By Reference (FAR 52.252-2) (Feb 1998) ... 22
C.3 Contract Terms and Conditions Applicable to GSA Acquisition of Commercial Items (GSAR 552.212-71) (Jul 2000) (FCI Deviation – Dec 1997) ... 23
C.4 Scope of Contract (I-FCI-102) (Mar 1998) ... 23
C.5 Guaranteed Minimum (I-FSS-106) (Oct 2000) ... 24
C.6 Ordering (FAR 52.216-18) (Deviation – Jan 1994) ... 24
C.7 Placement of Orders (GSAR 552.216-72) (Sep 1999) (Alternate II – Sep 1999) ... 24
C.8 Order Acknowledgement (G-FSS-907) (Apr 1984) ... 25
C.9 Blanket Purchase Agreements (I-FSS-646) (May 2000) ... 25
C.10 Order Limitations (FAR 52.216-19) (Oct 1995) (Variation I – Aug 1999) ... 26
C.11 Requirements Exceeding the Maximum Order (I-FSS-125) (Sep 1999) ... 26
C.12 Delivery Prices (F-FSS-202-G) (Jan 1994) ... 27
C.13 Commercial Delivery Schedule (Multiple Award Schedule) (GSAR 552.211-78) (Feb 1996) ... 28
C.14 Urgent Requirements (I-FSS-140-B) (Jan 1994) ... 29
C.15 Deliveries to the U.S. Postal Service (F-FSS-230) (Jan 1994) ... 29
C.16 Contractor's Billing Responsibilities (G-FSS-913) (May 2000) ... 29
C.17 Payment by Government Commercial Purchase Card (GSAR 552.232-77) (Mar 2000) (Alternate I – Mar 2000) ... 30
C.18 Imprest Funds (Petty Cash) (I-FSS-918) (May 2000) ... 30
C.19 Electronic Commerce-FACNET (I-FS-599) (Apr 1997) ... 31
C.20 ANSI Standards (C-FSS-427) (Jul 1991) ... 32
C.21 Assignment of Claims (GSAR 552.232-23) (Sep 1999) ... 33
C.22 Contractor's Report of Sales (GSAR 552.238-74) (Sep 1999) ... 33
C.23 Industrial Funding Fee (GSAR 552.238-76) (Sep 1999) ... 34
C.24 Option to Extend the Term of the Contract (Evergreen) (I-FSS-163) (Apr 2000) ... 34
C.25 Notice Regarding Option(s) (GSAR 552.217-71) (Nov 1992) ... 35
C.26 Examination of Records by GSA (Multiple Award Schedule) (GSAR 552.215-71) (Aug 1997) ... 35
C.27 Economic Price Adjustment – FSS Multiple Award Schedule Contracts (GSAR 552.216-70) (Sep 1999) (Alternate I – Sep 1999) (FCI Deviation) ... 35

## TABLE OF CONTENTS – CONTINUED


C.28 Price Reductions (GSAR 552.238-75) (Sep 1999) ..........36

C.29 Modifications (Multiple Award Schedule) (GSAR 552.243-72) (Jul 2000) (FCI Deviation) ..........37

C.30 Submission and Distribution of Authorized FSS Schedule Pricelists (GSAR 552.238-71) (Sep 1999) (FCI Deviation) ..........39

C.31 Contract Price Lists (I-FCI-600) (Jun 2001) ..........40

C.32 Warranty – Multiple Award Schedule (GSAR 552.246-73) (Mar 2000) ..........41

C.33 RESERVED ..........42

C.34 Default (I-FSS-249-B) (May 2000) ..........42

C.35 Cancellation (GSAR 552.238-73) (Sep 1999) ..........42

C.36 Logistical Support Privileges (X-FCI-XXX) (Dec 1997) ..........42

C.37 Dissemination of Information by Contractor (I-FSS-680) (Apr 1984) ..........43

C.38 Service of Protest (FAR 52.233-2) (Aug 1996) ..........43

C.39 Protests Filed Directly with the General Services Administration (GSAR 552.233-70) (Mar 2000) ..........43

C.40 Indefinite Quantity (FAR 52.216-22) (Oct 1995) (Variation - Oct 1995) ..........46

C.41 Contractor Sales Criteria (I-FSS-639) (Jul 2000) ..........46

C.42 Invoice Payments (GSAR 552.232-74) (Sep 1999) ..........46

C.43 Central Contractor Registration (CCR) (I-FSS-598) (Oct 1999) ..........47

C.44 Vendor Managed Inventory (VMI) Program (MAS) (G-FSS-906) (Jan 1999) ..........47

C.45 Performance Incentives (I-FSS-60) (Apr 2000) ..........48

C.46 Clauses for Overseas Coverage (I-FCI-108) (May 2000) ..........48

C.47 Characteristics for Electric Current (C-FSS-412) (May 2000) ..........48

C.48 Transshipments (D-FSS-477) (Apr 1984) ..........48

C.49 Foreign Taxes and Duties (I-FSS-314) (Dec 1990) ..........49

C.50 Parts and Service (I-FSS-594) (Oct 1988) ..........49

C.51 Section 8(a) Award Multiple Award Schedule (I-FSS-91) (Oct 2000) ..........49

C.52 Contractor Team Arrangements (I-FSS-40) (Sep 2000) ..........50

C.53 GSA *Advantage!*™ (I-FSS-597) (SEP 2000) ..........50

C.54 Performance Reporting Requirements (I-FSS-50) (Feb 1995) ..........50

D.1 Contract Terms and Conditions Required to Implement Statutes or Executive Orders – Commercial Items (FAR 52.215-5) (May 2001) (Tailored) ..........51

**TABLE OF CONTENTS – CONTINUED**


E.1 Instructions to Offerors – Commercial Items (FAR 52.212-1) (Mar 2000) is incorporated herein by reference ....53

E.2 Period for Acceptance of Offers (A-FSS-12-C) (Nov 1997) ....53

E.3 Consideration of Offers under Standing Solicitation (A-FSS-11) (Dec 2000) ....53

E.4 Submission of Offers – Additional Instructions (CI-FCI-2) (Mar 1996) ....53

E.5 Preparation of Offer (Multiple Award Schedule) (GSAR 552.212-70) (Aug 1997) ....54

E.6 Requirement for Cost or Pricing Data or Information Other Than Cost or Pricing Data (FAR 52.215-20) (Oct 1997) (Alternate IV – Oct 1997) (Variation I – Sep 1999) ....55

E.7 Requirement for Cost or Pricing Data or Information Other Than Cost or Pricing Data – Modifications (FAR 52.215-20) (Oct 1997) (Alternate IV – Oct 1997) (Variation I – Sep 1999) ....56

E.8 Identification of Energy-Efficient Office Equipment and Supplies Containing Recovered Materials or Other Environmental Attributes (GSAR 552.238-72) (Sep 1999) ....56

E.9 Energy Efficient Computer Equipment (X-FCI-XXX) ....57

F.1 Evaluation – Commercial Items (Multiple Award Schedule) (GSAR 552.212-73) (Aug 1997) ....58

F.2 Past Performance (X-FCI-XXX) ....58

F.3 Dealers and Suppliers (I-FSS-644) (Oct 1988) ....58

F.4 Sales and Service Requirements (X-FCI-XXX) ....58

F.5 Information Technology (IT) Professional Services – Past Performance/Responsibility Determination (X-FCI-XXX) ....59

F.6 Goals for Subcontracting Plan (GSAR 552.219-73) (Sep 1999) (Alternate I – Sep 1999) ....59

F.7 Preaward On-Site Equal Opportunity Compliance Review (FAR 52.222-24) (Feb 1999) ....60

G.1 Offeror Representations and Certifications – Commercial Items (FAR 52.212-3) (May 2001) (Alternate III – Oct 2000) (Deviation) ....61

G.2 Trade Agreements (FAR 52.225-5) (Apr 2000) ....65

G.3 Section 8(a) Representation for the Multiple Award Schedule Program (K-FSS-9) (Sep 2000) ....67

G.4 Commercial Sales Practices Format (CSP-1) ....68

G.5 Authorized Negotiators (K-FSS-1) (Mar 1998) ....70

G.6 Contact for Contract Administration (G-FCI-900-C) (Jun 2001) ....71

G.7 Ordering Information (GSAR 552.216-73) (Sep 1999) (Alternate II – Sep 1999) ....72

G.8 Contractor's Remittance (Payment) Address (G-FSS-914-A) (May 2000) ....73

G.9 Place of Performance (Far 52.215-6) (Oct 1997) ....73

G.10 Data Universal Numbering System (DUNS) Number (FAR 52.204-6) (Jun 1999) ....74

G.11 Electronic Format ....74

## TABLE OF CONTENTS – CONTINUED

G.12 Exemption from Application of Service Contract Act Provisions for Contracts for Maintenance, Calibration, and/or Repair of Certain Information Technology, Scientific and Medical and/or Office and Business Equipment – Contractor Certifications (FAR 52.222-48) (Aug 1996) .......... 75

G.13 Compliance with Veterans Employment Reporting Requirements .......... 75

Attachment I – Guidelines for Format and Content of Federal Supply Service Information Technology Schedule Pricelist .......... 76

Attachment II – Past Performance Evaluation Report by Dun & Bradstreet .......... 128

Attachment III – Guidelines for Developing a Small Business Subcontracting Plan .......... 133

## C. CONTRACT CLAUSES

### C.1 CONTRACT TERMS AND CONDITIONS-COMMERCIAL ITEMS (FAR 52.212-4) (MAY 2001) (TAILORED)

(a) **Inspection/Acceptance**. The Contractor shall only tender for acceptance those items that conform to the requirements of this contract. The Government reserves the right to inspect or test any supplies or services that have been tendered for acceptance. The Government may require repair or replacement of nonconforming supplies or reperformance of nonconforming services at no increase in contract price. The Government must exercise its post acceptance rights (1) within a reasonable time after the defect was discovered or should have been discovered; and (2) before any substantial change occurs in the condition of the item, unless the change is due to the defect in the item.

(b) **Assignment**. The Contractor or its assignee may assign its rights to receive payment due as a result of performance of this contract to a bank, trust company, or other financing institution, including any Federal lending agency in accordance with the Assignment of Claims Act (31 U.S.C. 3727). However, when a third party makes payment (e.g., use of the Governmentwide commercial purchase card), the Contractor may not assign its rights to receive payment under this contract.

(c) **Changes**. Changes in the terms and conditions of this contract may be made only by written agreement of the parties.

(d) **Disputes**. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal or action arising under or relating to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233-1, Disputes [DEC 1998], which is incorporated herein by reference. The Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract.

(e) **Definitions**. The clause at FAR 52.202-1, Definitions [MAY 2001], is incorporated herein by reference.

(f) **Excusable delays**. The Contractor shall be liable for default unless nonperformance is caused by an occurrence beyond the reasonable control of the Contractor and without its fault or negligence such as, acts of God or the public enemy, acts of the Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, unusually severe weather, and delays of common carriers. The Contractor shall notify the Contracting Officer in writing as soon as it is reasonably possible after the commencement of any excusable delay, setting forth the full particulars in connection therewith, shall remedy such occurrence with all reasonable dispatch, and shall promptly give written notice to the Contracting Officer of the cessation of such occurrence.

(g) **Invoice**. The Contractor shall submit an original invoice and three copies (or electronic invoice, if authorized,) to the address designated in the contract to receive invoices. An invoice must include-

(1) Name and address of the Contractor;
(2) Invoice date;
(3) Contract number, contract line item number and, if applicable, the order number;
(4) Description, quantity, unit of measure, unit price and extended price of the items delivered;
(5) Shipping number and date of shipment including the bill of lading number and weight of shipment if shipped on Government bill of lading;
(6) Terms of any prompt payment discount offered;
(7) Name and address of official to whom payment is to be sent; and
(8) Name, title, and phone number of person to be notified in event of defective invoice.

Invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903) [SEE C.2] and Office of Management and Budget (OMB) Circular A-125, Prompt Payment. Contractors are encouraged to assign an identification number to each invoice.

(h) **Patent indemnity**. The Contractor shall indemnify the Government and its officers, employees and agents against liability, including costs, for actual or alleged direct or contributory infringement of, or inducement to infringe, any United States or foreign patent, trademark or copyright, arising out of the performance of this contract, provided the Contractor is reasonably notified of such claims and proceedings.

(i) **Payment**. Payment shall be made for items accepted by the Government that have been delivered to the delivery destinations set forth in this contract. The Government will make payment in accordance with the Prompt Payment Act (31 U.S.C. 3903) and Office of Management and Budget (OMB) Circular A-125, Prompt Payment. If the Government makes payment by Electronic Funds Transfer (EFT), see 52.212-5(b) [SEE D.1] for the appropriate EFT clause. In connection with any discount offered for early payment, time shall be computed from the date of the invoice. For the purpose of computing the discount earned, payment shall be considered to have been made on the date which appears on the payment check or the specified payment date if an electronic funds transfer payment is made.

(j) **Risk of loss**. Unless the contract specifically provides otherwise, risk of loss or damage to the supplies provided under this contract shall remain with the Contractor until, and shall pass to the Government upon:

(1) Delivery of the supplies to a carrier, if transportation is f.o.b. origin; or
(2) Delivery of the supplies to the Government at the destination specified in the contract, if transportation is f.o.b. destination.

(k) **Taxes**. The contract price excludes all State and local taxes levied on or measured by the contract or sales price of the services or completed supplies furnished under this contract. The Contractor shall state separately on its invoices taxes excluded from the contract price, and the Government agrees either to pay the amount of the taxes to the Contractor or provide evidence necessary to sustain an exemption. See FAR clauses 52.229-1 State and Local Taxes [SEE C.2]; 52.229-3 Federal, State, and Local Taxes [SEE C.2]; and 52.229-5 Taxes—Contracts Performed in U.S. Possessions or Puerto Rico [SEE C.2] which are incorporated by reference.

(l) **Termination for the Government's convenience**. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

(m) **Termination for cause**. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(n) **Title**. Unless specified elsewhere in this contract, title to items furnished under this contract shall pass to the Government upon acceptance, regardless of when or where the Government takes physical possession.

(o) **Warranty**. The Contractor warrants and implies that the items delivered hereunder are merchantable and fit for use for the particular purpose described in this contract.

(p) **Limitation of liability**. Except as otherwise provided by an express or implied warranty, the Contractor will not be liable to the Government for consequential damages resulting from any defect or deficiencies in accepted items.

(q) **Other compliances**. The Contractor shall comply with all applicable Federal, State and local laws, executive orders, rules and regulations applicable to its performance under this contract.

(r) **Compliance with laws unique to Government contracts**. The Contractor agrees to comply with 31 U.S.C. 1352 relating to limitations on the use of appropriated funds to influence certain Federal contracts; 18 U.S.C. 431 relating to officials not to benefit; 40 U.S.C. 327, et seq., Contract Work Hours and Safety Standards Act; 41 U.S.C. 51-58, Anti-Kickback Act of 1986; 41 U.S.C. 265 and 10 U.S.C. 2409 relating to whistleblower protections; 49 U.S.C. 40118, Fly American; and 41 U.S.C. 423 relating to procurement integrity.

(s) **Order of precedence**. Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order: (1) the schedule of supplies/services; (2) the Assignments, Disputes, Payments, Invoice, Other Compliances, and Compliance with Laws Unique to Government Contracts paragraphs of this clause; (3) the clause at 52.212-5; (4) addenda to this solicitation or contract, including any license agreements for computer software; (5) solicitation provisions if this is a solicitation; (6) other paragraphs of this clause; (7) the Standard Form 1449; (8) other documents, exhibits, and attachments; and (9) the specification.

(3) The Contractor must bear the transportation costs of returning the products to and from the repair facility, or the costs involved with Contractor personnel traveling to the Government facility for the purpose of repairing the product onsite, during the 90 day warranty period.

C.33 RESERVED

**C.34 DEFAULT (I-FSS-249-B) (MAY 2000)**

In addition to any other clause contained herein related to termination, the following is applicable to orders placed under Federal Supply Schedule contracts.

Any ordering office may, with respect to any one or more orders placed by it under the contract, exercise the same right of termination, acceptance of inferior articles or services, and assessment of excess costs as might the Contracting Officer, except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."

**C.35 CANCELLATION (GSAR 552.238-73) (SEP 1999)**

Either party may cancel this contract in whole or in part by providing written notice. The cancellation will take effect 30 calendar days after the other party receives the notice of cancellation. If the Contractor elects to cancel this contract, the Government will not reimburse the minimum guarantee.

**C.36 LOGISTICAL SUPPORT PRIVILEGES (X-FCI-XXX) (DEC 1997)**

Where the Contractor may require Logistical Support in overseas areas in order to meet contract obligations, the ordering activities should obtain the required support in accordance with their applicable regulations prior to issuance of any delivery orders under this GSA contract. The Contractors will provide all the necessary information required of them by the applicable regulations in order to assist the ordering activity in obtaining the Logistical Support Privileges.