# EXHIBIT 3

PAGE 1 OF 3 PAGES

# ORDER FOR SUPPLIES OR SERVICES

**IMPORTANT: Mark all packages and papers with contract and/or order numbers.**

1. DATE OF ORDER: 09/20/2004
2. CONTRACT NO. *(If any)*: BPA73873/GS35F4338D
3. ORDER NO.: 0404DO37408
4. REQUISITION/REFERENCE NO.:
5. ISSUING OFFICE *(Address correspondence to)*: Minerals Management Service GovWorks (Franchise), 381 Elden Street, MS 2510, Herndon VA 20170-4817

6. SHIP TO:
- a. NAME OF CONSIGNEE: See Line Item Extended Description
- b. STREET ADDRESS: See line item description
- c. CITY:
- d. STATE:
- e. ZIP CODE:
- f. SHIP VIA:

7. TO:
- a. NAME OF CONTRACTOR: ATTN: Susan Wearing
- b. COMPANY NAME: Bearingpoint, Inc.
- c. STREET ADDRESS: dba KPMG Consulting, Inc., 1676 International Dr.
- d. CITY: McLean
- e. STATE: VA
- f. ZIP CODE: 22102

8. TYPE OF ORDER
- [ ] a. PURCHASE
  REFERENCE YOUR:
  Please furnish the following on the terms and conditions specified on both sides of this order and on the attached sheet, if any, including delivery as indicated.
- [X] b. DELIVERY - Except for billing instructions on the reverse, this delivery order is subject to instructions contained on this side only of this form and is issued subject to the terms and conditions of the above-numbered contract.

9. ACCOUNTING AND APPROPRIATION DATA: 04- -9B-2510R57- -282J- - - - - - - - - - -

10. REQUISITIONING OFFICE:

11. BUSINESS CLASSIFICATION *(Check appropriate box(es))*
- [ ] a. SMALL
- [X] b. OTHER THAN SMALL
- [ ] c. DISADVANTAGED
- [ ] d. WOMEN-OWNED

12. F.O.B. POINT: Destination

13. PLACE OF
- a. INSPECTION:
- b. ACCEPTANCE:

14. GOVERNMENT B/L NO.:

15. DELIVER TO F.O.B. POINT ON OR BEFORE *(Date)*: 12/31/2005

16. DISCOUNT TERMS
- 10 days %
- 20 days %
- 30 days %
- 30 days %

17. SCHEDULE *(See reverse for Rejections)*

| ITEM NO. (a) | SUPPLIES OR SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|
| | SEE LINE ITEM DETAIL | | | | | |

17(h) TOT. *(Cont. pages)*

SEE BILLING INSTRUCTIONS ON REVERSE

18. SHIPPING POINT:
19. GROSS SHIPPING WEIGHT:
20. INVOICE NO.:

21. MAIL INVOICE TO: invoices@govworks.gov
- a. NAME: Minerals Management Service, INVOICE TEAM
- b. STREET ADDRESS *(or P.O. Box)*: 381 Elden Street, MS 2500
- c. CITY: Herndon
- d. STATE: VA
- e. ZIP CODE: 20170-4817

17(i) GRAND TOTAL: $7,800,000.00

22. UNITED STATES OF AMERICA BY *(Signature)*: [signature] 9/20/04

23. NAME *(Typed)*: James E. MacKay
TITLE: CONTRACTING/ORDERING OFFICER

NSN 7540-01-152-8083 OPTIONAL FORM 347 (REV. 6/95)

**SUPPLEMENTAL INVOICING INFORMATION** PAGE NO. 2 of 3

If desired, this order (or a copy thereof) may be used by the Contractor as the Contractor's invoice, instead of a separate invoice, provided the following statement, (signed and dated) is on (or attached to) the order: "Payment is requested in the amount of $________. No other invoice will be submitted." However, if the Contractor wishes to submit an invoice, the following information must be provided; contract number (if any), order number, item number(s), description of supplies or service, sizes, quantities, unit prices, and extended totals. Prepaid shipping costs will be indicated as a separate item on the invoice. Where shipping costs exceed $10 (except for parcel post), the billing must be supported by a bill of lading or receipt. When several orders are invoiced to an ordering activity during the same billing period, consolidated periodic billings are encouraged.

**RECEIVING REPORT**

Quantity in the "Quantity Accepted" column on the face of this order has been: ☐ inspected, ☐ accepted, ☐ received by me and conforms to contract. Items listed below have been rejected for the reasons indicated.

| SHIPMENT NUMBER | PARTIAL / FINAL | | DATE RECEIVED | SIGNATURE OF AUTHORIZED U.S. GOV'T REP. | DATE |
|---|---|---|---|---|---|
| TOTAL CONTAINERS | GROSS WEIGHT | | RECEIVED AT | TITLE | |

**REPORT OF REJECTIONS**

| ITEM NO. | SUPPLIES OR SERVICES | UNIT | QUANTITY REJECTED | REASON FOR REJECTION |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## ORDER FOR SUPPLIES OR SERVICES SCHEDULE - CONTINUATION

PAGE NO. 3 of 3

IMPORTANT: Mark all packages and papers with contract and/or order numbers.

| DATE OF ORDER | CONTRACT NO. | ORDER NO. |
|---|---|---|
| 09/20/2004 | BPA73673/GS35F4338D | 0404DO37408 |

| ITEM NO. (a) | SUPPLIES OR SERVICES (b) | QUANTITY ORDERED (c) | UNIT (d) | UNIT PRICE (e) | AMOUNT (f) | QUANTITY ACCEPTED (g) |
|---|---|---|---|---|---|---|
| | *Funding Document #s: RU390087 = $485,230.00*<br>*RU49W0158 = $2,000,000.00*<br>*RU49W0157 = $794,213.00*<br>*RU49W0159 = $4,380,557.00*<br>*RU490102W = $150,000.00* | | | | | |
| 0001 | Add Funding for Task 08 | 1.00 | job | 7,800,000.000 | 7,800,000.00 | |

The Contractor shall perform this Task Order Number 37408 under BPA73673/GS35F4338D in accordance with the contractor's proposal titled Task Order 08 dated September 17, 2004, and the general terms and conditions of the above referenced contract. The aforementioned proposal is hereby incorporated into this document with the same force and effect as if included in full text.

The period of performance for this Task Order is August 1, 2004 to December 31, 2006. It is the Government intent to award this order in individual segments. This first segment will provide funds to complete the deliverable "Deployment 2A Baseline Complete" due on November 24, 2004, including Services, Travel ILS(DSL) Hardware and Holdback.

Travel = $645,143.00
ILS(DSL)Hardware =$ 58,252.00
Services =$7,096,605.00

Total = $7,800,000.00

| *Delivery Date* | *Start Date* | *End Date* |
|---|---|---|
| 12/31/2006 | 08/01/2004 | 12/31/2006 |

*Please contact James E. Mackay(703)787-1351with any contractual questions.*

*TOTAL CARRIED FORWARD TO 1ST PAGE (ITEM 17i)* → $7,800,000.00

NSN 7540-01-152-8082 OPTIONAL FORM 348 (10-83)

# EXHIBIT 4

GovWorks
FEDERAL ACQUISITION CENTER
Government working with government.

September 29, 2005

Ms. Virginia Baxter
BearingPoint, Inc.
1676 International Drive
McLean, VA 22101

Reference: (a) Task Order 0404DO37408 , "Task Order 3"
(b) Cure Notice, dated August 23, 2005

Subject: Termination for Cause Notice, Task Order 0404DO37408, for the U. S. Department of the Interior, Financial and Business Management System Project

Dear Ms. Baxter:

A. *Effective Date of Termination.* You are hereby notified that Task Order 0404DO37408 is terminated completely for cause in accordance with FAR 52.212-4, paragraph (m) -- Contract Terms and Conditions -- Commercial Items. The termination is effective immediately upon receipt of this notice.

B. *Reasons for Termination.* Task Order 3, Reference (a) is being terminated for cause because of BearingPoint's failure to perform and failure to provide the Government adequate assurance of future performance as outlined in Reference (b). I have carefully considered your contentions of excusable delay and found them to be largely without merit. I will address each point in detail by separate correspondence.

C. *Remedies.* The Government's preferred remedies will be to acquire similar services and items from another contractor and to charge BearingPoint with any excess reprocurement costs together with any incidental or consequential damages incurred. The Government reserves all rights and remedies provided by law or under the task order, in addition to charging excess costs. The Government is not liable to BearingPoint for any amount of supplies or services not accepted.

D. *Cessation of Work and Notification to Immediate Subcontractors.* You shall take the following steps:

1. Stop all work, make no further deliveries, and place no further orders relating to Task Order 3.
2. Keep adequate records of your compliance with paragraph 1 above showing the i) date you received the notice of termination, ii) effective date of the termination; and iii) extent of completion of performance on the effective date.

Subject: Termination for Cause Notice, Task Order 0404DO37408, for the U.S. Department of the Interior, Financial and Business Management System Project

3. Furnish notice of termination to each immediate subcontractor and supplier that will be affected by this termination. In the notice, i) specify your Government contract number, ii) state whether the contract has been terminated completely or partially, iii) provide instructions to stop all work, make no further shipments or deliveries, place no further orders, and terminate all subcontracts under the contract, iv) request that similar notices and instructions be given to its immediate subcontractors.
4. Notify the Contracting Officer of all pending legal proceedings that are based on subcontracts or purchase orders under Task Order 3, or in which a lien has been or may be placed against termination inventory to be reported to the Government. Also promptly notify the Contracting Officer of any such proceedings that are filed after receipt of this notice.
5. Take any other actions required by the Contracting Officer or under the termination clause in Task Order 3.

E. *Termination Inventory.* As instructed by the Contracting Officer, transfer title and deliver to the Government all termination inventory, including subcontracting termination inventory that you have the right to take.

F. *Special Instructions.*

1. All BearingPoint personnel and subcontractors shall take all personal belongings and promptly exit the building. Hard copies of documents should be left at workstations. At the exit, DOI-issued identification badge, building access badge, keys, and any other government property in their possession shall be returned to the DOI FBMS personnel or the guards stationed at the exit. The property being returned shall clearly identify the BearingPoint employee or subcontractor returning the property. All personnel shall exit through the front doors of the building only.

2. All electronic files related to this project in the possession of all BearingPoint personnel and subcontractors and not relinquished when exiting the duty station shall be forwarded to BearingPoint for consolidation. These electronic files shall be consolidated onto compact disks and forwarded to the DOI COTR, Mike Johnston, to arrive no later that October 14, 2005.

3. The CDs of electronic files should be clearly marked with the name of the BearingPoint employee or subcontractor who provided the files. BearingPoint shall return all Government property from their employees and subcontractors who are offsite to the COTR not later than October 14, 2005.

G. *Settlements with Subcontractors.* You remain liable to your subcontractors and suppliers for proposals arising because of the termination of their subcontracts or orders. You are requested to settle these settlement proposals as promptly as possible.

H. *Patents.* If required by Task Order 3 promptly forward the following to the Contracting Officer, not later than October 14, 2005:

1. Disclosure of all inventions, discoveries and patent applications made in the performance of Task Order 3.
2. Instruments of license or assignments on all inventions, discoveries and patent applications made in the performance of Task Order 3.

I. *Employees Affected.*

1. If this termination, together with other outstanding terminations, will necessitate a significant reduction in your workforce, you are urged to i) promptly inform the local State Employment Service of your reduction in force schedule in numbers and occupation, so that the Service can take timely action in assisting displaced workers; ii) give affected employees notice of the employment reduction and inform them of the facilities and services available to them through the local State Employment Service offices; iii) advise affected employees to file applications with the state employment service to qualify for unemployment insurance if necessary; iv) inform officials of local unions having agreements with you of the impending reduction in force; and v) inform the local Chamber of Commerce and other appropriate organization which are prepared to offer practical assistance in finding employment for displaced workers of the pending reduction in force.
2. If applicable, urge subcontractors to take similar actions to those described in subparagraph 1 above.

J. *Administrative.* The Contracting Officer, Aprell Joyce, will be in charge of the settlement of this termination. Matters not covered by this notice, should be brought to her attention. If you have any questions regarding this notice please contact me via e-mail at Aprell.Joyce@mms.gov or 703-787-1163.

K. *Appeal.* This notice constitutes a Contracting Officer's final decision. You may appeal this decision, under the Disputes clause, to the Interior Board of Contract Appeals. If you decide to appeal, you must, within ninety days from the date you receive this decision, mail or otherwise furnish written notice to the Interior Appeals Board and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the task order by number. With regard to appeals to the Interior Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less or its

Subject: Termination for Cause Notice, Task Order 0404DO37408, for the U.S. Department of the Interior, Financial and Business Management System Project

accelerated procedure for claims of $100,000 or less. Instead of appealing to the Interior Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims within twelve months of the date you receive this decision.

Please acknowledge receipt of this notice.

Sincerely,

Aprell Joyce
Contracting Officer

ACKNOWLEDGEMENT OF NOTICE
The undersigned acknowledges receipt of a signed copy of this notice on ________.
Two signed copies of this notice are to be returned.

______________________________
(Company)

By ______________________________
(Name)

______________________________
(Title)

cc: GSA Contracting Officer

# EXHIBIT 5

GovWorks
FEDERAL ACQUISITION CENTER
Government working with government.

CERTIFIED MAIL, RETURN RECEIPT

October 27, 2005

Ms. Susan Weersing
BearingPoint, Inc.
1676 International Drive
McLean, VA 22102

Reference: (a) Cure Notice, dated October 20, 2005

Subject: Termination for Cause Notice, Contract BPA73873, for the U. S. Department of the Interior, Financial and Business Management System

Dear Ms. Weersing:

A. *Effective Date of Termination.* You are hereby notified that the remaining balance of Contract BPA73873 is terminated for cause in accordance with FAR 52.212-4, paragraph (m) -- Contract Terms and Conditions -- Commercial Items. The termination is effective immediately upon receipt of this notice.

B. *Reasons for Termination.* The subject contract is terminated for cause because of BearingPoint's failure to (1) make adequate progress; (2) affirm the accuracy of the representations set forth in its original FBMS proposal (*e.g.*, the amount and types of software that must be provided by the Government) and its intent to be bound by its representations; (3) provide a plan of action that details how BearingPoint intends to fulfill its obligations under the BPA with respect to the remaining deployments under the BPA; and (4) provide assurances that BearingPoint will abide by its promises.

In response to your letter dated October 24, 2005, you are hereby advised that FAR Part 49 does not apply to this contract. And the Government's advertisement does not prejudge any cure that BearingPoint may propose. After repeated requests from the Government for adequate assurances, BearingPoint continues to deny its obligations to perform this contract diligently at the agreed firm-fixed price and within schedule. The Government considers BearingPoint's response to be an express and unequivocal manifestation of BearingPoint's intention not to provide its promised performance, within the time and at the cost agreed to on the bilateral award of Contract BPA 73873, awarded on January 5, 2004.

Subject: Termination for Cause Notice, Contract BPA73873, for the U. S. Department of the Interior, Financial and Business Management System

C. *Remedies*. The Government's preferred remedies will be to acquire similar services and items from another contractor and to charge BearingPoint with any excess reprocurement costs together with any incidental or consequential damages incurred. The Government reserves all rights and remedies provided by law or under the task order, in addition to charging excess costs. The Government is not liable to BearingPoint for any amount of supplies or services not accepted.

D. *Administrative*. The Contracting Specialist, Deldridge Berry, and Termination Contracting Officer, Richard Bolick, will be in charge of the settlement of this termination. Matters not covered by this notice, should be brought to their attention. If you have any questions regarding this notice please contact Deldridge Berry via e-mail at deldridge.berry@mms.gov or 703-787-1173.

E. *Appeal*. This notice constitutes a Contracting Officer's final decision. You may appeal this decision, under the Disputes clause, to the Interior Board of Contract Appeals. If you decide to appeal, you must, within ninety days from the date you receive this decision, mail or otherwise furnish written notice to the Interior Appeals Board and provide a copy to the Contracting Officer from whose decision this appeal is taken.

Sincerely,

Aprell Joyce
Contracting Officer

ACKNOWLEDGEMENT OF NOTICE

The undersigned acknowledges receipt of a signed copy of this notice on ____________.
Two signed copies of this notice are to be returned.

______________________________
(Company)

By ______________________________
(Name)

______________________________
(Title)

cc: GSA Contracting Officer

GovWorks
FEDERAL ACQUISITION CENTER
Government working with government.

October 27, 2005

Ms. Susan Weersing
BearingPoint, Inc.
1676 International Drive
McLean, VA 22102

Subject: Assignment of Termination Contracting Officer, Task Order 0404DO37408, for the U.S. Department of the Interior, Financial and Business Management System

Dear Ms. Weersing:

Mr. Richard P. Bolick has been assigned as the Termination Contracting Officer (TCO). The Contract Specialist in support of the TCO is Mr. Deldridge Berry. Mr. Bolick will be in charge of the settlement of this termination. Any other matters not specifically addressed in the termination notice should be brought to his attention. Below is the TCO and Specialist contact information:

TCO Mr. Richard Bolick
Phone: 703-787-1395; Fax 703-787-1106
Email: richard.bolick@mms.gov

Contract Specialist Mr. Deldridge Berry:
Phone: 703-787-1173
Email: deldridge.berry@mms.gov

If there are any questions in regards to this assignment, please contact Deldridge Berry.

Sincerely,

Aprell Joyce
Contracting Officer

# EXHIBIT 6

LEXSEE 77 FED. CL. 189

**BEARINGPOINT, INC., Plaintiff, v. THE UNITED STATES, Defendant.**

**No. 06-675C**

**UNITED STATES COURT OF FEDERAL CLAIMS**

*77 Fed. Cl. 189*; *2007 U.S. Claims LEXIS 129*

**April 30, 2007, Filed**

**HEADNOTES**

GSA Schedule Contract, Blanket Purchase Agreement, and Task Orders; Authority of Ordering Agency or GSA Contracting Officer to Terminate for Cause; Subject Matter Jurisdiction.

**COUNSEL: [**1]** Jonathan S. Aronie, BearingPoint, Inc., with whom were Louis D. Victorino, Keith R. Szeliga, and Marko W. Kipa, Sheppard Mullin Richter & Hampton LLP, Domingo Maradiegue, BearingPoint, Inc., Of Counsel, all of Washington, D.C., for Plaintiff.

Franklin E. White, Jr., with whom were Peter D. Keisler, Assistant Attorney General, and Jeanne E. Davidson, Acting Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., James L. Weiner and Emily E. Parkhurst, U.S. Department of the Interior, Of Counsel, for Defendant.

**JUDGES:** THOMAS C. WHEELER, Judge.

**OPINION BY:** THOMAS C. WHEELER

**OPINION**

**OPINION AND ORDER**

**ON MOTION TO DISMISS**

**[*189]** WHEELER, Judge.

This case is before the Court on Plaintiff BearingPoint's motion to dismiss for lack of subject matter jurisdiction, pursuant to *Rule 12(b)(1) of the Rules of the Court of Federal Claims* ("RCFC"). In its September 26, 2006 Complaint, BearingPoint requested a timely review under the Contract Disputes Act, *41 U.S.C. § 601 et seq.*, of two default terminations issued by a Department of Interior ("DOI") Contracting Officer. BearingPoint now asserts in its motion to dismiss **[**2]** that the DOI lacked authority to issue such termination notices. The case involves BearingPoint's Multiple Award Schedule contract with the General Services Administration ("GSA"), and a Blanket Purchase Agreement ("BPA") and Task Order issued by the DOI. The DOI Contracting Officer purported to terminate the Task Order and the BPA for default on September 29, 2005 and October 27, 2005 respectively. BearingPoint contends that, under the applicable contract provisions, only the GSA Contracting Officer had authority to issue default terminations where BearingPoint alleged excusable delay as a defense.

Defendant asserts that an amendment to the Federal Acquisition Regulations ("FAR"), enacted after the award of the BPA but before the award of the Task Order, authorized the DOI Contracting Officer to terminate these agreements. Defendant argues that a contracting officer's authority to bind the Government is determined by statute, **[*190]** regulation, and internal agency procedure, not by contract provisions.

The question presented is whether a FAR amendment effective *after* a government contract is executed should nonetheless govern the contract, and take precedence over a conflicting contract **[**3]** provision. The competing terms are in *FAR §§ 8.406-4* and *8.406-6*, 1 and in Federal Supply Schedule clause I-FSS-249-B, "Default." If the FAR amendment governs, then the DOI Contracting Officer was authorized to issue the default terminations. If the contract provision governs, only the GSA Contracting Officer could issue the default

terminations.

1 See *69 Fed. Reg. 34,231*, -38, -39 (June 18, 2004). The Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council promulgated *FAR §§ 8.406-4* and *8.406-6* "to incorporate policies for services and to strengthen the procedures for establishing Blanket Purchase Agreements under the Federal Supply Schedules." The amendments became effective July 19, 2004. Id.

For the reasons explained below, the Court concludes that it does not have jurisdiction over this matter. The contract language in BearingPoint's Schedule Contract granted **[**4]** exclusive authority to the GSA Contracting Officer to issue a default termination where the contractor alleged excusable delay as a defense. This language also governed the administration of the BPA and the Task Order. The GSA could have incorporated the FAR amendment into the Schedule Contract as a modification, but it did not. Instead, the GSA reaffirmed the application of its standard clause, I-FSS-249-B, after the FAR amendment had been issued. The Complaint therefore is dismissed without prejudice, and the DOI default terminations are to be treated as a legal nullity.

Factual Background

2

2 Based upon the parties' briefs, the material facts necessary to resolve Plaintiff's motion are not in dispute.

On January 29, 2003, Plaintiff, BearingPoint, Inc., entered into Multiple Award Schedule ("MAS" or "Schedule") Contract No. GS-35F-4338D with the GSA. Through this "Schedule 70" contract, BearingPoint provides information technology and system integration services to federal agencies. On August 7, 2003, the **[**5]** DOI issued Request for Quotations No. 73873 to holders of GSA Schedule 70 contracts. (Deft's Exh. A). This solicitation sought technical proposals to implement the DOI's Financial and Business Management System ("FBMS") Project. The FBMS is a multi-phased, department-wide information technology system intended to replace older, disparate software systems. The new system will provide a platform for DOI business functions such as travel, accounting, procurement, and personnel management. The solicitation informed offerors that DOI intended to award a single BPA to the offeror that submitted the best value proposal conforming to the solicitation requirements.

The DOI determined BearingPoint's proposal to be the best value, and on January 5, 2004, awarded BPA No. 73873 to BearingPoint under the MAS Contract. (Pltf's Exh. A). The DOI estimated that the value of the purchases through the BPA would total $ 20 million between the date of award and September 2013. Id. at 2. The BPA, and all task orders placed under it, incorporated the terms and conditions of the MAS Contract, including Modification No. 6 thereto, dated January 29, 2003. (Pltf's Exh. B, PP 4.6.1, 4.6.7).

As contemplated **[**6]** by the BPA, the DOI began awarding task orders to BearingPoint. On September 20, 2004, the DOI awarded Task Order 3 (Order No. 0404D037408) to BearingPoint in accordance with the terms and conditions of the BPA and the MAS Contract. (Pltf's Exh. C). Task Order 3 required BearingPoint to implement certain functions of the FBMS in three offices of the DOI--the Minerals Management Service, the Office of Surface Mining, Reclamation, and Enforcement, and the Bureau of Land Management.

In the Spring of 2005, BearingPoint began to fall behind schedule in the performance of Task Order 3. A dispute developed between the parties regarding the responsibility for the delays. On August 23, 2005, the DOI's Contracting Officer, Ms. Aprell Joyce, issued a Cure Notice to BearingPoint regarding **[*191]** Task Order 3. (Deft's Response at 5). Ms. Joyce sent a copy of the Cure Notice to the GSA's Contracting Officer, Ms. Jacqulin Draughn. Id. With the DOI threatening to terminate Task Order 3 and the BPA for cause, BearingPoint alleged that the performance delays were excusable because they were caused by DOI. (Deft's Exh. I). BearingPoint notified the DOI that the dispute should be referred to and resolved **[**7]** by the GSA Contracting Officer, and that the DOI Contracting Officer lacked authority to issue a default termination where the contractor alleged excusable delay. Id.

On September 9, 2005, Ms. Joyce sent an e-mail message to Ms. Draughn, in which she stated:

> I was hoping to hear from you or GSA attorney today regarding the clause in Schedule 70 contract I-FSS-249-B (Default).

> I understand that you are researching this and attempting to contact the attorney, but in addition to the questions that I have previously asked, I would like to add the following:
>
> Is it possible for you as the Contracting Officer or GSA to delegate the authority of making the determination on whether the failure is excusable? [Can you please get] back to me? I can submit the request via a formal letter if needed.
>
> Thank you and I look forward to talking with you soon.

(Deft's Exh. F). On September 12, 2005, Ms. Draughn responded by e-mail message to Ms. Joyce, stating as follows:

> Generally, when a dispute arises that relates solely to the task order (i.e., does not impact the schedule contract), the contracting officer responsible for issuing a final decision is the **[**8]** task order CO. If, however, there is a dispute that goes to the terms and conditions of the schedule contract, the matter must be referred to the schedule contracting officer for resolution.
>
> Late delivery seems like a performance issue, a matter for resolution at the task order level. Also, note that *FAR 8.406-4* governs terminations for cause under the schedules program. Although it requires compliance with *FAR 12.403*, it is important to start with and follow the 8.4 procedures. Please call me with any questions on [telephone number].

Id.

The DOI Contracting Officer issued a termination for cause of Task Order 3 on September 29, 2005, and a termination for cause of BPA 73873 on October 27, 2005. (Pltf's Exh. D, E). Ms. Joyce sent copies of both termination notices to Ms. Draughn. Id. BearingPoint filed a claim with the DOI Contracting Officer on July 28, 2006, challenging both terminations for cause, and seeking damages for added and changed work totaling $ 19,842,777. BearingPoint's September 26, 2006 Complaint challenges the terminations, but does not address the claim for money damages. BearingPoint filed **[**9]** its motion to dismiss on January 19, 2007. Defendant opposed the motion in a February 20, 2007 response. BearingPoint filed a March 9, 2007 reply in support of its motion.

Relevant Regulations and Contract Provisions

The authority of a contracting officer to terminate a task order or BPA under a GSA Schedule Contract is addressed in a number of regulations, and by certain provisions of the contract at issue. BearingPoint's Schedule Contract included the commercial items contract terms and conditions set forth in *FAR § 52.212-4* (May 2001). Section (m) of this clause, "termination for cause," states as follows:

> (m) *Termination for cause.* The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all **[**10]** rights and remedies provided by law . If it is determined that the Government improperly terminated this contract **[*192]** for default, such termination shall be deemed a termination for convenience.

(Pltf's Exh. H at 9). This clause was in effect on the date of award of the BPA and Task Order 3 to BearingPoint, and remains in effect today.

GSA periodically updates its standard Schedule Contract clauses by issuing "Refresh" amendments which are incorporated into specific Schedule Contracts by reference. GSA issued "Refresh # 1" to the official GSA Schedule Contract on June 14, 2000. Pursuant to Refresh # 1, GSA incorporated the May 2000 version of the

Federal Supply Schedule clause I-FSS-249-B into the Schedule Contract. (Pltf's Exh. I at 10, 13). Clause I-FSS-249-B is the standard GSA Default clause for Schedule contracts. The May 2000 version provides:

> In addition to any other clause contained herein related to termination, the following is applicable to orders placed under Federal Supply Schedule contracts.
>
> Any ordering office may, with respect to any one or more orders placed by it under the contract, exercise the same right of term ination, acceptance of inferior **[**11]** articles or services, and assessment of excess costs as might the Contracting Officer, *except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."*

GSA Schedule Contract clause I-FSS-249-B (May 2000) (emphasis added). This clause vests exclusive authority in the GSA Schedule Contracting Officer to determine whether a Schedule contractor is in default when an excusable delay allegation exists. [3]

> 3 Through May 12, 2006, GSA had issued 19 other "Refresh" amendments. (Pltf's Exh. J at 4). GSA's "Refresh # 19," dated May 12, 2006, contains the same standard Default clause at paragraph C.34. Id. at 6, 9.

The granting of exclusive authority to the **[**12]** GSA Contracting Officer in such circumstances also is addressed in the FAR. As of January 29, 2003 when GSA awarded the Schedule Contract to BearingPoint, FAR Subpart 8.4, "Federal Supply Schedules," *Section 8.405-5*, "Termination for Default," provided as follows:

> (a)(1) An ordering office [DOI] may terminate any one or more orders for default in accordance with part 49, Termination of Contracts. The schedule contracting office [GSA] shall be notified of all cases where an ordering office has declared a Federal Supply Schedule contractor in default or fraud is suspected.
>
> (2) *Should the contractor claim that the failure was excusable, the ordering office [DOI] shall promptly refer the matter to the schedule contracting office [GSA].* In the absence of a decision by the schedule contracting office (or by the head of the schedule contracting agency, on appeal) excusing the failure, the ordering office may charge the contractor with excess costs resulting from repurchase.

*FAR § 8.405-5 (2002)* [4] (emphasis added). This provision required the DOI, as ordering office, to refer matters involving an excusable delay allegation to the **[**13]** GSA Contracting Officer.

On July 19, 2004, after DOI issued the BPA to BearingPoint, but before DOI issued the Task Order, the FAR Council modified FAR Subpart 8.4 to provide that, in appropriate circumstances, the ordering office *may* terminate a task order for cause:

> *FAR § 8.406-4*, Termination for Cause
>
> *(a)(1)* An ordering activity contracting officer may terminate individual orders for cause. Termination for cause shall comply with FAR 12.403, and may include charging the contractor with excess costs resulting from repurchase.
>
> *(2)* The schedule contracting officer shall be notified of all instances where an ordering activity contracting officer has terminated for cause an individual order to a **[*193]** Federal Supply Schedule contractor, or if fraud is suspected.
>
> *(b) If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate.*

> *FAR § 8.406-6*, Disputes
>
> *(a)* Disputes pertaining to the performance of orders under a schedule contract. (1) Under the Disputes clause of the schedule contract, *the ordering activity contracting officer* **[**14]** *may* (i) issue final decisions on disputes arising from performance of the order . . . *or* (ii) refer the matter to the schedule contracting officer.

*FAR §§ 8.406-4, 8.406-6 (July 19, 2004)* [5] (emphasis added). Notably, GSA continued to use its standard Default clause after the FAR amendments, and did not alter the terms of the parties' agreements to reflect the FAR amendments. See "Refresh # 19," May 12, 2006 (Pltf's Exh. J).

4 See *48 C.F.R. § 8.405-5 (2002)* (revised as of October 1, 2002).

5 See *48 C.F.R. §§ 8.406-4, 8.406-6 (2004)* (revised as of October 1, 2004).

Finally, the Court notes that "Refresh # 3" incorporates the commercial items terms and conditions set forth in *FAR § 52.212-4* (May 2001). That FAR provision contains a "Changes" clause providing that "[c]hanges in the terms and conditions of this contract may be made **[**15]** only by written agreement of the parties." (Pltf's Exh. H at 9).

Standard for Decision

Subject matter jurisdiction must be established before the Court may proceed to the merits of any action. *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*. The party asserting the Court's jurisdiction bears the burden of proof on jurisdictional issues. *United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627, 634 (2004)* (citing *McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189, 56 S. Ct. 780, 80 L. Ed. 1135 (1936)*; *Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998)*; *Ware v. United States, 57 Fed. Cl. 782, 784 (2003)*; *Clearwater Constructors, Inc. v. United States, 56 Fed. Cl. 303, 307 (2003))*.

In the normal analysis under *RCFC 12(b)(1)*, the burden is on the plaintiff to "come forward with evidence establishing the court's jurisdiction." See *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)*; *Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988)*. In unusual cases like this, however, where the traditional **[**16]** roles are reversed, the burden logically should follow. In more neutral language, "the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered." *Browning Ferris Indus., Inc. and Subsidiaries v. United States, 75 Fed. Cl. 591, 594 (2007)* (citing *Reynolds, 846 F.2d at 748*). The underlying facts relevant to Plaintiff's motion to dismiss are not in dispute.

Jurisdictional Analysis

On January 29, 2003, when GSA awarded the Schedule Contract to BearingPoint, both *FAR § 8.405-5(a)(2)* and the standard GSA Default clause, I-FSS-249-B, provided that only the GSA Contracting Officer had authority to issue a default termination notice when the contractor had alleged excusable delay as a defense. The FAR Council amended and renumbered the FAR provision, effective July 19, 2004, to grant the ordering agency's contracting officer permissive authority to either issue the default termination notice, or to refer the matter to the GSA contracting officer. *FAR §§ 8.406-4(b), 8.406-6(a)*. The Court must determine whether the GSA Contracting Officer **[**17]** alone had authority to issue the termination notices, or whether the DOI Contracting Officer also possessed such authority. Specifically, the issue is whether the July 19, 2004 FAR revisions have any application to BearingPoint's Schedule Contract, BPA, or Task Orders.

The Court is mindful of the "Changes" clause of the standard terms and conditions, which provides that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." (Pltf's Exh. H at 9). Further, *FAR § 1.108*, "FAR conventions," provides that "FAR changes apply to solicitations issued on or after the effective date of the change[.]" *FAR § 1.108(d)(1)*. The FAR provides limited **[*194]** exceptions to this general rule when contracting officers wish to apply FAR amendments retroactively to pre-existing agreements. Specifically, contracting officers are permitted to "include the FAR changes in solicitations issued before the effective date, provided [that] award of the resulting contract(s) occurs on or after the effective date[.]" Id. at *(d)(2)*. Another option is for contracting officers to "include the changes in any existing **[**18]** contract with appropriate consideration." Id. at *(d)(3)*. In

the present case, there is no indication that GSA or DOI modified or attempted to modify the Schedule Contract, the BPA, or Task Order 3 to include the amended FAR provisions.

A recent GSA pronouncement submitted by Defendant supports the Court's conclusion. In a February 16, 2007 agency directive issued to "FAS Clause Manual Users," GSA instructs that the standard "Default" clause, I-FSS-249-B, "should no longer be used and needs to be removed from all existing solicitations and contracts." (Deft's Exh. H). The directive further states that "[s]chedule contracting offices should remove I-FSS-249-B from all solicitations *at the next refresh,* and remove it from all in-house offers prior to award." Id. (emphasis added). This directive serves as an acknowledgment by GSA that some contractual action is necessary to eliminate the I-FSS-249-B Default clause in the future, and that the clause still exists in the BearingPoint agreements.

BearingPoint has cited three cases in support of its position. In *United Partition Sys., Inc., 59 Fed. Cl. 627,* the Court determined that it did not have jurisdiction **[**19]** over a Schedule contractor's action because an Air Force contracting officer exceeded his authority in issuing a default termination where the contractor alleged excusable delay. *Id. at 641*. The Court held that the unauthorized termination was a legal nullity, stating that "an invalid contracting officer's decision may not serve as the basis for a CDA action[.]" Id. (citing *Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed. Cir. 1996)).* While United Partition involved a termination that predated the FAR provisions relied upon by Defendant, the Court in that case found the GSA's standard Default clause, I-FSS-249-B, to be controlling. The Court likewise finds that I-FSS-249-B controls in the present case.

In Monster Gov't Solutions, Inc., DOTBCA Nos. 4532, 06-1 BCA P 33,236, recon. den., *2006-2 B.C.A. (CCH) 33312*, the Board of Contract Appeals dismissed a Schedule contractor's appeal because the ordering agency, the U.S. Custom and Border Protection, Department of Homeland Security, issued an unauthorized default termination. In that case, Appellant Monster had asserted that its performance failures **[**20]** were excusable. Relying on the standard GSA Default clause, I-FSS-249-B, the Board ruled that "only the GSA schedule contracting officer possessed authority to issue an appealable decision on the excusability of the performance failures." Id. at 164, 699. Monster is closely aligned with BearingPoint's facts, because it involved an ordering agency's termination action *after* the July 19, 2004 effective date of the FAR revisions. Distinguishing the present case from Monster, however, is that the agency there issued the task order *before* the FAR revisions. Still, the board reached the correct outcome, finding clause I-FSS-249-B controlling.

BearingPoint also cites *Spectrum Healthcare Res., ASBCA No. 55120, 2006-2 B.C.A. (CCH) P33377*. In Spectrum, the VA had modified the standard GSA Default clause through a formal deviation process, allowing an ordering agency contracting officer to terminate a delivery order for default when a contractor alleged excusable delay. Id. at 165, 469. Accordingly, the Board permitted the default termination of the ordering agency to stand. BearingPoint asserts that the "exception proves the rule," where the VA in Spectrum **[**21]** used a formal deviation to alter the outcome prescribed by the then-effective regulations.

While each of the above decisions is instructive, none of them presents the precise fact pattern at issue here. Nonetheless, the Court agrees with Plaintiff that the DOI Contracting Officer lacked authority to issue the terminations at issue.

Assembled together, the terms of the agreement, the relevant regulations, and the **[*195]** case law above present a clear picture of the bargain struck between BearingPoint and the Government. Briefly summarized, BearingPoint agreed to supply the Government with information technology and system integration services. The parties agreed that the DOI Contracting Officer would *not* have the authority to terminate the contract for cause if BearingPoint alleged excusable delay as the cause for default. (Clause I-FSS-249-B; *FAR 8.405-5(a)(2)*). The parties further agreed that future changes in the terms and conditions of their contract could be made "only by written agreement of the parties." (*FAR 52.212-4(c)*). In this regard, the parties established the procedures by which subsequent changes to the FAR could be **[**22]** incorporated into the terms of their agreement. (*FAR 1.108(d)(1)-(3)*).

In the face of this agreement, Defendant would have the Court elevate *FAR §§ 8.406-4* and *8.406-6* above the bargained-for terms expressly agreed to by the parties. Were the Court to accept Defendant's argument, it would

be difficult to envision *any* contract language upon which a contractor could rely to protect itself against unilateral Government modifications after the ink on their contract had dried.

Defendant's argument runs counter to the fundamental prohibition against the retrospective application of legislation. Indeed:

> the first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice, and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate w hen they were performed . . . [A ] retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the **[**23]** legislature.'

*Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199, 34 S. Ct. 101, 58 L. Ed. 179 (1913)* (quoting *United States v. Heth, 7 U.S. (3 Cranch) 399, 413, 2 L. Ed. 479 (1806))*. The Court of Claims adopted this reasoning in Lockheed Aircraft Corp. v. United States, where it stated:

> The normal rule is for legislation and regulations to be applied prospectively to events and agreements which occur later . . . . This is particularly true of directives dealing with the substantive aspects of contracts; it would be a rare regulation which would even seek to modify, to the contractor's detriment, substantive rights in an agreement already consummated.

*192 Ct. Cl. 36, 46, 426 F.2d 322, 327-28 (1970)*.

The contract provisions and regulations here certainly constitute such "substantive rights." To disturb those rights would undoubtedly cause a detriment to BearingPoint, who bargained for the benefit of review by the GSA Contracting Officer in the event that BearingPoint asserted excusable delay in response to a termination by the DOI Contracting Officer. See *United Partition Sys., Inc., 59 Fed. Cl. at 636* ("In aggregate, the **[**24]** effect of [FAR 804.5-5 and I-FSS-249-B] is to strip the ordering office's contracting officer of authority to issue a final decision evaluating a contractor's excusability defense."). Where BearingPoint availed itself of this contract clause, and thus invoked the protections for which it bargained, this Court will not disturb the underlying bargain. Likewise, where it was within Defendant's rights to modify the contract by issuing a "Refresh," this Court will not excuse Defendant for having failed to do so when perhaps it should have.

Conclusion

For the reasons discussed above, the Court concludes that the default terminations were "jurisdictionally invalid," and shall be treated as legal nullities. See *United Partition, 59 Fed. Cl. at 637*. Consequently, there are no terminations properly before the Court, and the Court is without jurisdiction to review the merits of this case. The BPA and Task Order 3 therefore still exist and remain in effect. Plaintiff's Motion to Dismiss is GRANTED. The Clerk of the Court is directed to dismiss Plaintiff's Complaint without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler

Judge

# In the United States Court of Federal Claims

No. 06-675C

(Filed: May 15, 2007)

| | |
|---|---|
| ****************************************** | * |
| | * |
| BEARINGPOINT, INC., | * |
| | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |
| ****************************************** | * |

## ORDER

On May 14, 2007, counsel for Defendant filed with the Court a motion for clarification concerning the Court's April 30, 2007 Opinion and Order. Defendant requests that the Court clarify the statement in the last paragraph of the Opinion and Order wherein the Court stated that the "BPA and Task Order 3 therefore still exist and remain in effect."

Defendant is correct in asserting that this statement means only that the BPA and Task Order were not terminated through the affirmative actions of an authorized Government contracting officer. The Court's Order and Opinion does not extend to any issue regarding the merits of whether the BPA or Task Order 3 are still in effect or may have expired for some other reason.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge