**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BEARINGPOINT, INC.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No. 07-631(C)**<br>**(Judge Wheeler)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Jonathan S. Aronie
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Dated: January 14, 2008

Attorney for BearingPoint, Inc.

OF COUNSEL

Louis D. Victorino
Christopher M. Loveland
Keith R. Szeliga
Marko W. Kipa
SHEPPARD MULLIN RICHTER
& HAMPTON LLP

Domingo Maradiegue
BEARINGPOINT, INC.

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 1

II. BACKGROUND ........................................................ 1

III. SUMMARY JUDGMENT LEGAL STANDARD ........................................................ 2

IV. ARGUMENT ........................................................ 4

A. DOI'S IMPROPER TERMINATIONS FOR DEFAULT HAVE AUTOMATICALLY BEEN CONVERTED INTO TERMINATIONS FOR CONVENIENCE ........................................................ 4

B. DOI'S TERMINATION OF THE BPA WAS IMPROPER BECAUSE A BPA IS NOT A CONTRACT ........................................................ 6

V. CONCLUSION ........................................................ 8

## TABLE OF AUTHORITIES

### Cases

Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363 (Fed. Cir. 2004).................................. 3

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)............................................................... 3

BearingPoint, Inc. v. United States, 77 Fed. Cl. 189 (2007) ........................................................ 5

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ................................................................... 3

Finkelstein v. United States, 29 Fed. Cl. 611 (1993)........................................................... 3

Hill v. United States, 945 F.2d 1529 (Fed. Cir. 1991), rev'd on other grounds, 506 U.S. 546 (1993)........................................................................................................... 3

Int'l Tel. & Tel. Corp., ITT Comm. Div. v. United States, 509 F.2d 541 (Cl. Ct. 1975)............... 4

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)..................................... 3

Timberland Paving & Constr. Co. v. United States, 8 Cl. Ct. 653 (1985)................................. 4, 5

### Statutes

RCFC 56(a)………………………………………………………………………………….3

RCFC 56(c)……………………………………………………………………………….1, 3

FAR 52.212-4 (m)……………………………………………………………………………...5

## I. INTRODUCTION

Pursuant to Rule 56(c) of the Rules of United States Court of Federal Claims, Plaintiff, BearingPoint, Inc., respectfully requests that partial summary judgment be granted on the purely legal issues that (1) DOI's improper terminations for default of Task Order 3 and the Blanket Purchase Agreement ("BPA") have been converted into terminations for convenience and, (2) DOI's purported termination of the BPA also was improper because a BPA is not a contract.[1]

## II. BACKGROUND

On September 29, 2005 and October 27, 2005, DOI purported to terminate for default Task Order 3 and the GSA Schedule BPA under which that Task Order was awarded. BearingPoint appealed the terminations to the Court of Federal Claims on September 26, 2006. Based on the absence of a valid Contracting Officer's decision with respect to both terminations, BearingPoint filed a motion to dismiss its own Complaint under RCFC 12(b)(1) on January 19, 2007.

The Court issued its decision dismissing BearingPoint's Complaint for lack of subject matter jurisdiction on April 30, 2007. In its decision, the Court held, among other things, that the DOI contracting officer lacked the authority to issue the termination decisions, and, as a result, DOI's purported terminations were "jurisdictionally invalid" and to be "treated as 'legal nullities.'" Accordingly, as requested by BearingPoint, the Court dismissed the Complaint for

---

[1] As it is plaintiff's contention that the GSA Contracting Officer's purported Final Decision is without legal effect since Task Order 3 already had been terminated for the convenience of the Government as a matter of law, this Motion for Summary Judgment does not challenge the legal flaws inherent in that decision. Plaintiff will raise those issues (e.g., the GSA Contracting Officer's Final Decision exceeded her authority, used an improper legal standard, misstated the terms of DOI's initial cure notice, and made other material errors of law) in a future filing if necessary.

lack of subject matter jurisdiction. The Court issued a clarification Order on May 15, 2007, which noted that its April 2007 Opinion and Order did not reach "the merits of whether the BPA and Task Order 3 are still in effect or may have expired for some other reason."

On July 28, 2006, BearingPoint filed a certified claim with the DOI and GSA Contracting Officers requesting, among other things, compensation for added work performed under Task Order 3, breach of contract damages caused by DOI's ending BearingPoint's ability to continue work, and, in the alternative, constructive termination for convenience and a claim for the fair value of work performed by BearingPoint, delivered to DOI, and accepted by DOI. The July 28, 2006 certified claim included three volumes of supporting documentation related to DOI's improper conduct, including substantial evidence related to excusable delay. That certified claim was rejected by DOI in a Final Decision dated January 16, 2007.

On August 24, 2007, BearingPoint filed the present action against DOI. The DOJ moved this Court on October 18, 2007 to stay the Complaint and remand the matter to the GSA. On November 9, 2007, the Court granted the Government's motion, ordering, *inter alia*, that "GSA's Contracting Officer shall issue a final decision within 40 days, on or before December 19, 2007."

On December 19, 2007, the GSA Contracting Officer issued a purported Final Decision that, among other things, denied all but one of BearingPoint's claims of excusable delay, concluded that DOI's Final Decision to terminate for cause Task Order 3 was proper, and purported to deny the BearingPoint July 28, 2006 certified claim. The GSA Contracting Officer also concluded that "DOI's attempt to terminate the BPA was improper."

## III. SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986). A claimant may file a motion for summary judgment "at any time after the expiration of 60 days from the commencement of the action . . . with or without supporting affidavits." See RCFC 56(a). Summary judgment is appropriate where, as here, a claim involves a purely legal issue. Hill v. United States, 945 F.2d 1529, 1530 (Fed. Cir. 1991), rev'd on other grounds, 506 U.S. 546, 113 S. Ct. 941 (1993) (summary judgment appropriate because "case turns on a legal issue – the proper interpretation of the pertinent statutes and regulations."); Finkelstein v. United States, 29 Fed. Cl. 611, 617 (1993) ("legal issues of statutory and regulatory interpretation are amenable to resolution by summary judgment.") (citation omitted).

In considering a motion for summary judgment, the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 249. The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact; once this burden is met, in order to defeat summary judgment, the non-moving party must present evidence which demonstrates such a genuine issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548 (1986). In determining whether a genuine issue of material fact exists, the court must consider the evidence and resolve all doubts in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S. Ct. 1348 (1986); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1371 (Fed. Cir. 2004).

## IV. ARGUMENT

### A. DOI'S IMPROPER TERMINATIONS FOR DEFAULT HAVE AUTOMATICALLY BEEN CONVERTED INTO TERMINATIONS FOR CONVENIENCE.

Because the DOI Contracting Officer lacked authority to terminate Task Order 3 and the BPA for default, the purported terminations for default automatically converted to terminations for convenience. It is well established that a procedurally defective, unauthorized termination for default results in a termination for convenience. See, e.g., Int'l Tel. & Tel. Corp., ITT Comm. Div. v. United States, 509 F.2d 541 (Cl. Ct. 1975); Timberland Paving & Constr. Co. v. United States, 8 Cl. Ct. 653 (1985). In International Telephone and Telegraph, the Claims Court, the predecessor to the Court of Federal Claims, held that a purported termination for default resulted in a termination for convenience where, as here, "the Government[] [failed] to follow proper procedures in its default attempts." 509 F.2d at 553.

Similarly, in Timberland Paving, the court was confronted with a situation where, as here, the Contracting Officer who made the purported termination decision lacked the authority to do so. The court held that, as a result, "the purported termination of plaintiff's contract for default was invalid and of no legal force and effect. . . ." 8 Cl. Ct at 654. The court continued its analysis by noting that the contracting officer's "actions were not within [his] authority, when taken, and [were] null and void. . . ." Id. at 659. Consequently, the court concluded – without addressing the validity of the grounds for termination set forth in the termination notice – that the unauthorized termination for default resulted in a termination for convenience. Id. at 662 (remanding case to agency with "instructions to proceed promptly to determine the amount due plaintiff as if the . . . notice of termination for default issued to it had been issued pursuant to the contract clause providing for termination of the contract for the convenience of the government").

In this case, the Court already has concluded, in line with its prior decisions, that the DOI's purported terminations were procedurally defective because the DOI Contracting Officer exceeded her authority by evaluating BearingPoint's allegations of excusable delay, rather than referring those allegations to BearingPoint's GSA Schedule Contracting Officer, as required under the contract. Compare Timberland Paving, 8 Cl. Ct. at 659 with BearingPoint, supra, at 195. Further, consistent with its precedent, the Court concluded that the DOI Contracting Officer's purported terminations for default "shall be treated as legal nullities." Compare Timberland Paving, 8 Cl. Ct. at 659 with BearingPoint, supra, 77 Fed. Cl. at 195 . Accordingly, consistent with federal case law, the DOI Contracting Officer's purported terminations for default were procedurally defective, unauthorized, improper, and invalid, and therefore resulted in terminations for convenience.

The moment the Court determined that the DOI contracting officer lacked authority to terminate BearingPoint's GSA Schedule contract, the purported terminations for default converted to terminations for convenience by operation of law. In this regard, the termination for cause provision of BearingPoint's GSA Schedule Contract provides, in relevant part, as follows:

> If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

FAR 52.212-4 (m). There can be no dispute that the Court, in concluding that the DOI contracting officer lacked authority to terminate Task Order 3 and the BPA, "determined that the Government improperly terminated this contract for default." Id.; see also BearingPoint, supra, at 195. Accordingly, DOI's procedurally improper termination for cause "shall be deemed a termination for convenience" pursuant to FAR 52.212-4 (m), and summary judgment should be granted in favor of BearingPoint on Counts I and III of its First Amended Complaint.

**B. DOI'S TERMINATION OF THE BPA WAS IMPROPER BECAUSE A BPA IS NOT A CONTRACT.**

DOI issued a cure notice regarding, and purported to terminate, the BPA under which Task Order 3 was issued. DOI's termination of the BPA was improper because a BPA is not a contract that can be terminated. Indeed, it is well-established that a BPA simply is not a contract. Boehringer Mannheim Corp., B-279238, May 21, 1998, 98-1 CPD ¶ 141 (citing FAR 13.201(a) for the proposition that "[a] BPA is not a contract" in the context of a GSA schedule procurement); East West Research, Inc., B-233623, April 14, 1989, 89-1 CPD 379, at *2 n.1 ("A BPA is ordinarily not a contract."); Labat Anderson, Inc. v. United States, 50 Fed. Cl. 99 (2001) (analyzing whether the Court of Federal Claims possessed Tucker Act jurisdiction in a BPA dispute in light of the fact that a BPA is not a contract); Potomac Computers Unlimited, Inc., 94-1 BCA ¶ 26,304 (D.O.T.C.A.B. 1993) ("A blanket purchase agreement is not a contract. It is merely a collection of provisions that will only mature into a contract or contracts at such time or times as individual purchase orders may be issued by the government through authorized ordering offices and accepted by the contractor.").

Even the GSA Contracting Officer agreed that a BPA is not a contract in her purported Final Decision. See Exhibit 7 at 28-29. Specifically, the GSA Contracting Officer concluded that "a BPA is not a contract. . . [and] that DOI's attempt to terminate the BPA was improper." Id.

While the BPA itself is not a contract, each order placed pursuant to a BPA constitutes a separate contract. See, e.g., Julian Freeman, ASBCA 94-3 BCA ¶ 27,280 ("Separate contracts would come into being each time the Government ordered services [under a BPA] and appellant provided such services."); Janice L. Cox d/b/a/ Occupro Limited, ASBCA No. 50587, 03-1 BCA ¶ 32,205 (same). Hence, termination provisions referenced in a GSA Schedule BPA are

applicable *only* to the particular Task Orders issued under that BPA, not to the BPA itself. See CardioMetrix, DOTCAB Nos. 2571, 2591, May 3, 1993, 94-1 BCA ¶ 26,269.

The fact that BearingPoint's BPA was not a contract is further supported by its express terms. For example:

- The BPA plainly states that: "The BPA **does not obligate** any funds." See Exhibit 1 at 2 (emphasis in original).

- The BPA only *estimates* the number of labor hours to be acquired. It committed the Government to purchase *no* minimum number of hours. Id.

- The BPA includes only the "Total *Estimated* Cost." Id. (emphasis added). It did not commit the Government to expend any funds. Id.

- The BPA contemplates additional discussions regarding price on a Task Order basis. For example, the BPA advised BearingPoint that DOI could request additional price reductions at the time of placing a Task Order. Id.

Thus, well established case law and the express terms of the BPA itself confirm the non-contractual nature of the BPA. (Indeed, as noted, even the GSA Contracting Officer agreed that a BPA is not a contract.) Accordingly, summary judgment is warranted on Count X of BearingPoint's First Amended Complaint, which seeks a declaratory judgment that DOI's improper termination of the BPA was without legal effect.

## V. CONCLUSION

For the foregoing reasons, BearingPoint respectfully requests that this Court grant partial summary judgment in favor of BearingPoint.

Respectfully submitted,

__/s/ Jonathan S. Aronie___________

Jonathan S. Aronie
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Date: January 14, 2008

Attorney for BearingPoint, Inc.

Of Counsel:

Louis D. Victorino
Christopher M. Loveland
Keith R. Szeliga
Marko W. Kipa
SHEPPARD MULLIN RICHTER
& HAMPTON LLP

Domingo Maradiegue
BEARINGPOINT, INC.