No. 07-631C
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BEARINGPOINT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

OF COUNSEL:

JAMES L. WEINER
EMILY E. PARKHURST
Office of the Solicitor
Department of the Interior

FRANKLIN E. WHITE, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6462
Fax: (202) 514-7969

February 14, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

PAGE

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. Partial Summary Judgment Is Not Appropriate Where Material Facts Are In Dispute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. An Unauthorized And Void Termination Notice Issued By The DOI Contracting Officer Did Not Extinguish The Government's Right, Acting Through The GSA Contracting Officer, To Terminate For Default Task Order 3 Where Adequate Cause Existed, At The Time Of The Unauthorized Act, To Support A Default Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. BearingPoint Has Not Alleged Nor Established That It Was Prejudiced By The DOI's Issuance Of An Unauthorized And Void Termination Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B. The Court, In BearingPoint I, Did Not Hold That There Was An Improper Default Termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III. BearingPoint's Claim For A Declaratory Judgment Regarding The Purported Termination Of The BPA Was Rendered Moot By The GSA Contracting Officer's Final Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

American Airlines, Inc. v. United States,
204 F.3d 1103 (Fed. Cir. 2000) . . . . . . . . . 9

BearingPoint, Inc. v. United States,
77 Fed. Cl. 189 (2007) . . . . . . . . . passim

CW Government Travel, Inc. v. United States,
46 Fed. Cl. 554 (2000) . . . . . . . . . 22

College Point Boat Corporation v. United States,
267 U.S. 12 (1925) . . . . . . . . . 13

Composite Laminates, Inc. v. United States,
27 Fed. Cl. 310 (1992) . . . . . . . . . 10

DCX, Inc. v. Perry,
79 F.3d 132 (Fed. Cir. 1996) . . . . . . . . . 14

Decker & Co. v. West,
76 F.3d 1573 (Fed. Cir. 1996) . . . . . . . . . 14

G.C. Casebolt Co. v. United States,
421 F.2d 710 (Ct. Cl. 1970) . . . . . . . . . 13

International Electronic Technology Corp. v. Hughes Aircraft Co.,
476 F.3d 1329 (Fed. Cir. 2007) . . . . . . . . . 20

International Tel. & Tel. Corp., ITT Defense Communication Division v. United States,
509 F.2d 541 (Ct. Cl. 1975) . . . . . . . . . 16, 17

John Reiner & Co. v. United States,
325 F.2d 438 (Ct. Cl. 1963), cert. denied, 377 U.S. 931 (1964) . . . . . . . . . 13

Joseph Morton Co., Inc. v. United States,
757 F.2d 1273 (Fed. Cir. 1985) . . . . . . . . . 12

Kelso v. Kirk Bros. Mechanical Contractors, Inc.,
16 F.3d 1173 (Fed. Cir. 1994) . . . . . . . . . 12

**TABLE OF AUTHORITIES**
-continued-


**CASES** **PAGE(s)**

Lafayette Coal Co., ASBCA No. 32174, 89-3 BCA ¶ 21,963 (May 9, 1989) . . . . . . . . 14

M.E.S., Inc., PSBCA No. 4462, 01-1 BCA ¶ 31,268 (Feb. 7, 2001) . . . . . . . . 18

Montana v. United States, 124 F.3d 1269 (Fed. Cir. 1997) . . . . . . . . 9

Mothers Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566 (Fed. Cir. 1983) . . . . . . . . 20

Philadelphia Regent Builders v. United States, 643 F.2d 569 (Ct. Cl. 1980) . . . . . . . . 14

Pots Unlimited, Ltd. v. United States, 600 F.2d 790 (Ct. Cl. 1979) . . . . . . . . 12

Powell v. McCormack, 395 U.S. 486 (1969) . . . . . . . . 22

Roth v. McAllister Bros., Inc., 316 F.2d 143 (2nd Cir. 1963) . . . . . . . . 21

Rowe, Inc. v. General Services Admin., GSBCA No. 14211, 01-2 BCA ¶ 31,630 (Sept. 28, 2001) . . . . . . . . 14

Royal Lumber Co., Inc., ASBCA No. 2847, 1955 WL 9052 (Dec. 20, 1955) . . . . . . . . 15, 16

State of Fla., Dept. of Ins. v. United States, 81 F.3d 1093 (Fed. Cir. 1996) . . . . . . . . 14

Timberland Paving & Const. Co. v. United States, 8 Cl. Ct. 653 (1985) . . . . . . . . 17, 18

Wagner v. Professional Engineers in California Government, 354 F.3d 1036 (9th Cir. 2004) . . . . . . . . 21

## TABLE OF AUTHORITIES
-continued-


| STATUTES AND REGULATIONS | PAGE(s) |
| --- | --- |
| 28 U.S.C. § 1491 | 7 |
| 41 U.S.C. § 605(c)(5) | 8 |
| 41 U.S.C. §§ 601-613 | 7 |
| 48 C.F.R. § 52.212-4(m) | 11 |


## INDEX TO APPENDIX OF EXHIBITS


| | |
| --- | --- |
| Exhibit A (Excerpt of Request for Quotation No. 73873, dated Aug. 7, 2003) | 1-4 |
| Exhibit B (BearingPoint letter dated June 20, 2005) | 5-19 |
| Exhibit C (BearingPoint letter dated July 8, 2005) | 20-21 |
| Exhibit D (Declaration of Aprell Joyce) | 22-24 |
| Exhibit E (E-mail from Jacquline Draughn to Aprell Joyce, dated Sep. 12, 2005) | 25-27 |
| Exhibit F (Cure Notice regarding BPA No. 73873, dated Oct. 20, 2005) | 28-31 |
| Exhibit G (BearingPoint response to cure notice, dated Sep. 2, 2005) | 32-51 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BEARINGPOINT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-631C |
| v. | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this response in opposition to the motion for partial summary judgment that plaintiff BearingPoint, Inc. ("BearingPoint") filed on January 14, 2008. BearingPoint asks the Court to ignore a valid termination for default issued by the General Services Administration ("GSA") and, instead, to convert an unauthorized termination for default issued by the Department of the Interior ("DOI") into a termination for convenience, based upon a prior decision in which this Court held that it lacked jurisdiction. For the following reasons, BearingPoint's motion should be denied.

STATEMENT OF THE ISSUES

1. Whether the action of an authorized contracting officer to terminate a contract for default is lawful and valid where the action of the authorized official was preceded by a purported termination for default action by a Government official who lacked authority to terminate for default.

2. Whether this Court's determination that a termination for default was a "jurisdictionally invalid" legal nullity requires automatic conversion of the unauthorized termination

for default into a termination for convenience.

3. Whether BearingPoint is entitled to a declaration "that DOI's termination of the BPA for cause was without legal effect," where the Court has already held in an earlier case that the DOI contracting officer's attempt terminate the BPA for default was a legal nullity, and where the GSA contracting officer determined that the BPA was not a contract that could be terminated for default.

## BACKGROUND

BearingPoint (formerly KPMG Consulting, Inc.) provides information technology and systems integration services to Federal agencies through a GSA Schedule 70 contract (Contract No. GS-35F-4338D) (the "schedule contract"). On August 7, 2003, the DOI issued Request for Quotation No. 73873 ("the solicitation") to GSA Schedule 70 contractors. Def. Ex. A.[1] The solicitation sought technical proposals from GSA contractors to implement the DOI's Financial and Business Management System ("FBMS"), a multi-phased department-wide deployment to replace older, disparate software systems with an integrated platform for most DOI business functions, including travel, accounting, procurement, and personnel. Offerors were "expected to propose a total solution that addresses all objectives, considerations, and constraints on a stand-a[]lone basis." Id. The solicitation informed offerors that the DOI intended to award a single BPA to the offeror that submitted the best value proposal (technical/management solution, past performance, and price considered) that conformed to the solicitation requirements. Id.

---

[1] "Def. Ex. ___" refers to an exhibit attached to this brief. "Pl. Ex. ___" refers to an exhibit attached to Plaintiff's Proposed Findings of Uncontroverted Facts in Support of its Motion for Partial Summary Judgment. "Pl. Br. __" refers to a page of Plaintiff's Memorandum of Law In Support of its Motion for Partial Summary Judgment.

On October 10, 2003, BearingPoint submitted its detailed proposal in response to the solicitation. Among other features, BearingPoint's proposal included a section that cross referenced its proposed solutions with specific objectives listed in the solicitation, and included a critical path method integrated deployment schedule. Following oral presentations, the DOI determined BearingPoint's offer to be the best value, and, on January 5, 2004, the DOI awarded BPA No. 73873 to BearingPoint. Pl. Ex. 1. At that time, the DOI estimated that the value of purchases through the BPA would total $20 million between the date of award and September 2013. Id. The BPA stated: "All orders placed against this BPA are subject to the terms and conditions of the GSA Schedule Contract, except as noted below[.]" Id. The BPA expressly included "the original quote presented by BearingPoint dated October 10, 2003" and also stated: "The terms and conditions included in this BPA apply to all Task Orders made pursuant to it. In the event of an inconsistency between the provisions of this BPA and the Contractor's invoice, the provisions of this BPA will take precedence." Id.

Pursuant to the BPA, the DOI awarded several task orders to BearingPoint, however, BearingPoint's amended complaint in this case primarily addresses Task Order 3, which was terminated for default. The DOI awarded Task Order 3 (i.e., Order No. 0404DO37408) to BearingPoint on September 20, 2004. Pl. Ex. 3. Task Order 3 required BearingPoint to implement certain functions of the FBMS in three component offices of the DOI – the Minerals Management Service ("MMS"), the Office of Surface Mining, Reclamation, and Enforcement ("OSM"), Bureau of Land Management ("BLM") – by the end of 2005. Id. Page three of Task Order 3 states, in part:

> The contractor shall perform this Task Order 37408 under

> BPA73873/GS35F4338D in accordance with the contractor's proposal titled Task Order 03 dated September 17, 2004, and the general terms and conditions of the above referenced contract. The aforementioned proposal is hereby incorporated into this document with the same force and effect as if included in full text.

Id.

In the spring of 2005, BearingPoint began to fall behind schedule under Task Order 3. Throughout the spring and summer of 2005, DOI and BearingPoint engaged in many meetings and exchanges of correspondence regarding the schedule for Task Order 3 and BearingPoint's performance. Ultimately, discrete disputes were transformed into a more fundamental disagreement between the parties regarding the legal effect of the BPA. In its letter of June 20, 2005, responding to a DOI written request for adequate assurances of future performance, BearingPoint asserted that the BPA did not impose binding contractual obligations upon BearingPoint. Def. Ex. B. Subsequently, BearingPoint informed the DOI that it also believed that it had no obligation to perform Task Order 3. In a letter dated July 8, 2005, BearingPoint stated:

> BearingPoint has worked at risk since April 7, 2005 because BearingPoint has yet to receive a valid contractual document extending the funding of Order # 37408 beyond April 6, 2005. In so performing, BearingPoint specifically advised DOI that BearingPoint's continued performance should not be construed by DOI as acceptance of Modification 6. Thus, since BearingPoint has no current obligation to perform under Order # 37408, there is no contractual obligation to "deploy three bureaus in October of 2005."

Def. Ex. C.

On August 23, 2005, after numerous attempts at resolution and unacceptable BearingPoint responses to requests for adequate assurance of future performance, DOI's con-

tracting officer, Ms. Aprell Joyce, issued to BearingPoint a cure notice relating to Task Order 3. Ms. Joyce copied the GSA schedule contracting officer, Ms. Jacqulin Draughn, with this correspondence. Def. Ex. D (Declaration of Aprell Joyce). In its September 2, 2005 response, BearingPoint asserted, relying upon the I-FSS-249-B (Default) (May 2000)[2] clause in its schedule contract, that the DOI could not terminate Task Order 3 in the face of BearingPoint's alleged excusable delay. Def. Ex. G.

On September 9, 2005, Ms. Joyce sent an e-mail to Ms. Draughn, in which she stated:

> I was hoping to hear from you or GSA attorney today regarding the clause in Schedule 70 contract I-FSS-249-B (Default).
>
> I understand that you are researching this and attempting to contact the attorney, but in addition to the questions that I have previously asked, I would like to add the following:
>
> Is it possible for you as the Contracting Officer or GSA to delegate the authority of making the determination on whether the failure is excusable? [Can you please get] back to me? I can submit the request via a formal letter if needed.
>
> Thank you and I look forward to talking with you soon.

Def. Ex. E. On September 12, 2005, Ms. Draughn responded by e-mail to Ms. Joyce, stating as follows:

> Generally, when a dispute arises that relates solely to the task order (i.e., does not impact the schedule contract), the contracting officer responsible for issuing a final decision is the task order CO. If,

[2] Clause C.34 of the schedule contract, entitled Default (I-FSS-249-B) (May 2000), states: "Any ordering office may, with respect to any one or more orders placed by it under the contract, exercise the . . . right of termination . . . except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes." Pl. Ex. 2.

> however, there is a dispute that goes to the terms and conditions of the schedule contract, the matter must be referred to the schedule contracting officer for resolution.
>
> Late delivery seems like a performance issue, a matter for resolution at the task order level. Also, note that FAR 8.406-4 governs terminations for cause under the schedules program. Although it requires compliance with FAR 12.403, it is important to start with and follow 8.4 procedures. Please call me with any questions on [telephone number].

Id.

On September 29, 2005, following BearingPoint's written response to the cure notice for Task Order 3, Ms. Joyce issued a Termination for Cause Notice for Task Order 3 for failure to make progress on Deployments 2A and 2B, failure to give adequate assurances of future performance, and anticipatory breach. Pl. Ex. 4. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. D.

On October 20, 2005, Ms. Joyce issued to BearingPoint a cure notice relating to the remainder of the BPA 73873. Def. Ex. F. In that cure notice, the DOI noted BearingPoint's apparent disavowal of the BPA, and warned BearingPoint that it would terminate for cause the remainder of the BPA, unless BearingPoint: (1) affirmed the accuracy of the representations set forth in its original FBMS proposal; (2) detailed how it intended to fulfill its obligations under the BPA; and (3) agreed to abide by its promises. Id. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. D. On October 27, 2005, after BearingPoint disavowed that it had made an enforceable commitment, Ms. Joyce issued a Termination for Cause Notice for BPA 73873. Pl. Ex. 5. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. D.

On September 26, 2006 – almost 12-months from the date of the DOI contracting officer's termination notice relating to Task Order 3 – BearingPoint filed a complaint (No. 06-675C) in this Court. In its complaint in that case, BearingPoint alleged that, for various reasons, the DOI's termination actions were unauthorized or improper, and BearingPoint requested that the Court declare the terminations for default to be terminations for convenience. In paragraph 3 of its complaint, BearingPoint alleged that "[t]his Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 601-613."

In January 2007, BearingPoint filed a motion in which it requested that the Court dismiss its complaint for lack of subject matter jurisdiction.[3] BearingPoint argued that the termination decisions of the DOI contracting officer were "nullities" (and, thus, were not final decisions that could support this Court's exercise of subject matter jurisdiction pursuant to the Contract Disputes Act ("CDA")) because the "explicit terms of BearingPoint's GSA Schedule Contract," required the DOI contracting officer to refer BearingPoint's allegation of excusable delay to the GSA schedule contracting officer, whose decision would then constitute the Government's final decision for purposes of the CDA. We opposed BearingPoint's motion, arguing that a revision to the Federal Acquisition Regulation ("FAR") that had expanded the authority of ordering agency contracting officers to terminate orders for default was dispositive of the jurisdictional issue (that

[3] In July 2006, BearingPoint simultaneously submitted its certified claim for "improper termination for cause, breach of contract damages, and work-in-progress delivered and accepted," to both the GSA schedule contract contracting officer and the DOI contracting officer. In January 2007, the DOI contracting officer issued a final decision that denied BearingPoint's claim. Because BearingPoint's complaint in No. 06-675C was filed before the DOI issued its final decision upon its money claims, that final decision had no impact upon the Court's consideration of the jurisdictional issue raised by BearingPoint.

is, we argued that the DOI contracting officer possessed authority to issue a jurisdiction-conferring Government final decision, regardless of what effect, if any, the FAR revision had upon the merits of BearingPoint's argument that it had a contractual right to GSA review of the matter).

In April 2007, the Court granted BearingPoint's motion and dismissed BearingPoint's complaint without prejudice. BearingPoint, Inc. v. United States, 77 Fed. Cl. 189 (2007) ("BearingPoint I"). The Court, held that, through the GSA default clause, I-FSS-249-B (May 2000), contained in BearingPoint's GSA schedule contract, BearingPoint had "bargained for the benefit of review by the GSA Contracting Officer in the event that BearingPoint asserted excusable delay in response to a termination by the DOI Contracting Officer." Id. at 195. Accordingly, the Court held that "the default terminations were 'jurisdictionally invalid,' and shall be treated as legal nullities." Id.

Following the Court's dismissal of BearingPoint's complaint in No. 06-675C, the GSA schedule contract contracting officer initiated activities that would ultimately result in a GSA contracting officer's final decision relating to the BearingPoint terminations.

On August 24, 2007, while the GSA's activities were continuing, BearingPoint filed this action. In its current complaint, BearingPoint again seeks the relief of a Court declaration that the terminations for default were terminations for convenience. In addition, BearingPoint now seeks a money judgment, in alternative sums (the amounts claimed by BearingPoint are dependent upon whether the Court determined that the Government breached BearingPoint's contracts rather than terminated them for convenience), based upon the Government's actions.

On November 9, 2007, the Court, pursuant to RCFC 52.2 and 41 U.S.C. § 605(c)(5),

remanded the matter to the GSA with instructions that the GSA contracting officer issue a final decision on or before December 19, 2007.

On December 19, 2007, the GSA contracting officer issued a 30-page final decision, in which she carefully examined, issue-by-issue, the respective positions of the DOI and BearingPoint before stating her own decision upon the issues. Pl. Ex. 7. With regard to Task Order 3, the GSA contracting officer ultimately concluded:

> I find that [BearingPoint's] delays were not excusable, as they were either not supported, were not beyond the control of or without the fault or negligence of BearingPoint, or, in one instance, were due to the fault of both parties. Therefore, I conclude that DOI's termination for cause of Task Order 3 was proper.

Id. (at page 2). The GSA contracting officer, however, did not agree with the DOI's position that the BPA could be terminated for default:

> As stated in the FAR 13.201(a), a BPA is not a contract. BearingPoint and DOI both were aware of the type of contract vehicle that RFQ 73873 was being issued under, namely a BPA. However, BearingPoint was awarded task orders under the BPA and performed work as a result of the award of each task order. Even though the termination of the BPA is a nullity, this does not affect the termination for cause of Task Order 3.

Id. (at page 29).

## ARGUMENT

### I. Partial Summary Judgment Is Not Appropriate Where Material Facts Are In Dispute

Summary Judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. American Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000) (citing Montana v. United States, 124 F.3d 1269, 1273 (Fed. Cir. 1997)). "A material fact is one that may affect the decision, whereby the

finding of that fact is relevant and necessary to the proceedings." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party is not required to present its entire case in response to a motion for summary judgment. Id. Rather, "if . . . the non-moving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied." Composite Laminates, Inc. v. United States, 27 Fed. Cl. 310, 315 (1992). "[A]ny doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs." Id. (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

Here, the material facts (which are not the facts that BearingPoint presents in its proposed findings of uncontroverted facts) are in dispute. As we establish below, the law is well-settled that, where the Government can prove that adequate cause existed to support a default termination, a termination for default will not to be converted into a termination for convenience based upon harmless procedural defects or irregularities. In its motion for partial summary judgment, BearingPoint has not established that the Government lacked adequate cause to terminate for default Task Order 3 based upon the facts that existed on September 29, 2005, nor does it allege that it was prejudiced by the DOI's issuance of an unauthorized termination notice. Therefore, for the purposes of BearingPoint's motion for partial summary judgment the Court must assume that the Government possessed adequate cause to terminate for default Task Order 3, and that BearingPoint was not prejudiced by the DOI's issuance of an unauthorized termination notice. For this reason alone, the Court should deny BearingPoint's motion for partial summary judgment.

## II. An Unauthorized And Void Termination Notice Issued By The DOI Contracting Officer Did Not Extinguish The Government's Right, Acting Through The GSA Contracting Officer, To Terminate For Default Task Order 3 Where Adequate Cause Existed, At The Time Of The Unauthorized Act, To Support A Default Termination

Although not separated, on pages 4 and 5 of its motion for partial summary judgment, BearingPoint, arguably, raises two distinct legal questions in pressing its argument that it is entitled to a Court declaration that the Government's termination of Task Order 3 be treated as a termination for convenience. Both are without merit. First, BearingPoint argues that the termination notice issued by the DOI contracting officer was procedurally defective and unauthorized, and that a procedurally defective and unauthorized termination for default must automatically result in a termination for convenience. Pl. Br. 4. Second, BearingPoint argues that the Court's determination, in BearingPoint I, that the termination notice issued by the DOI contracting officer was "jurisdictionally invalid" and a "legal nullity," should be equated to a merits determination that the Government improperly terminated the contract for default (such that the unauthorized action must be converted to a termination for convenience pursuant to 48 C.F.R. § 52.212-4(m)). Pl. Br. 5.

Regardless of the reason why BearingPoint chose to conflate these two issues, it is apparent that separation of the issues exposes the severity of BearingPoint's first argument. Taking BearingPoint's first argument to its logical extreme, BearingPoint, presumably, would have to insist that an unauthorized DOI termination decision that had been issued upon a Friday afternoon would somehow preclude or invalidate an otherwise authorized[4] GSA termination

[4] Although in footnote 1, BearingPoint alludes that it may later challenge the authority of the GSA contracting officer, BearingPoint makes no such argument in its current motion for partial summary judgment. Accordingly, the Court must presume, for the purpose of deciding BearingPoint's pending motion, that the GSA contracting officer did not exceed her authority in

decision issued upon the following Monday morning. That argument would be inconsistent with established precedent and it violates common sense. Even given the admittedly different facts presented in this case, BearingPoint's argument fares no better here. Now that the GSA contracting officer has considered and rejected BearingPoint's claims of excusable delay related to Task Order 3, and confirmed the DOI's decision to terminate Task Order 3 for default, in order to establish its entitlement to a termination for convenience, BearingPoint must demonstrate that it was prejudiced by the fact that the DOI had issued an unauthorized termination notice. BearingPoint has not established (nor even alleged) prejudice.

BearingPoint's second argument rests entirely upon the fact that the validity of the DOI termination notices were litigated in this Court. In BearingPoint I, however, this Court merely dismissed the case for lack of jurisdiction. The Court did not consider the merits and did not hold that there had been an improper termination for default. Instead, the Court concluded that it lacked jurisdiction because there had not yet been any authorized Government action to terminate for default.

A. BearingPoint Has Not Alleged Nor Established That It Was Prejudiced By The DOI's Issuance Of An Unauthorized And Void Termination Notice

The law is well settled that, in defending against a contractor's suit, the Government may justify a contract termination upon any adequate ground for termination that existed at the time, whether known or unknown, unless the contractor can demonstrate prejudice. See, e.g., Pots Unlimited, Ltd. v. United States, 600 F.2d 790 (Ct. Cl. 1979); Kelso v. Kirk Bros. Mechanical Contractors, Inc., 16 F.3d 1173 (Fed. Cir. 1994); Joseph Morton Co., Inc. v. United States, 757

---

issuing the December 19, 2007 final decision.

F.2d 1273 (Fed. Cir. 1985). The Supreme Court stated this doctrine succinctly more than eighty years ago in its decision in College Point Boat Corporation v. United States, 267 U.S. 12 (1925):

> A party to a contract who is sued for its breach may ordinarily defend on the ground that there existed, at the time, a legal excuse for nonperformance by him, although he was then ignorant of the fact. He may likewise, justify an asserted termination, rescission, or repudiation, of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later. An unconditional right to cancel can be availed of for the purpose of terminating a contract, even after suit brought, unless some intervening change in the position of the other party renders that course inequitable.

Id. at 15-16 (emphasis added). Following the reasoning of College Point Boat Corporation, a line of precedent developed in the courts and in the boards of contract appeals that held that a contractor would be required to show actual harm before it could establish liability based upon the Government failure to follow termination procedures required by the contract or regulation. See, e.g., John Reiner & Co. v. United States, 325 F.2d 438, 444 (Ct. Cl. 1963), cert. denied, 377 U.S. 931 (1964) ("Unless the contractor can show that he has been injured by the failure to follow [regulatory] procedures, such a lapse is immaterial."); G.C. Casebolt Co. v. United States, 421 F.2d 710, 712 (Ct. Cl. 1970) ("In the case before us, the Government may have erred (we are assuming) in putting its refusal to let plaintiff proceed on the basis that no contract had been effected, but, if so, an adequate justification for the Government's action still existed in the termination article.").

Admittedly, many of the cases involved the issue of whether the Government would be permitted to limit its liability (that is, avoid breach damages) by relying upon termination for convenience rights that had not been exercised properly (or at all) at the time of the alleged

breach. However, precedent also supports the proposition that harmless procedural deficiencies will not invalidate an otherwise justified default termination where the contractor would essentially be awarded a windfall. See, e.g., Philadelphia Regent Builders v. United States, 643 F.2d 569, 572 (Ct. Cl. 1980) ("[p]laintiff does not claim that it was harmed in any way by the admitted defects of the [termination] notice. We hold, therefore, that such defects give plaintiff no cause to complain here. We do not favor sloppy practices nor approve of violations of the procurement regulations, but in the instant case no harm has come thereby. To nullify this termination for default solely on the grounds of these harmless technical defects would be to grant plaintiff an entirely unwarranted windfall."); State of Fla., Dept. of Ins. v. United States, 81 F.3d 1093 (Fed. Cir. 1996); DCX, Inc. v. Perry, 79 F.3d 132, 135 (Fed. Cir. 1996) ("Although compliance or noncompliance with section 49.402-3(f) may aid a Board of Contract Appeals or a court in determining whether a contracting officer has abused his discretion in terminating a contract for default . . . the regulation does not confer rights on a defaulting contractor. A contracting officer's failure to consider one or more of the section 49.402- 3(f) factors therefore does not require that a default termination be converted into a termination for the convenience of the government."); Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996) ("*[P]hiladelphia Regent* recognizes the basic principle that harm should accompany a defect in an otherwise proper termination notice in order for the contractor to seek relief based on that defect."); Rowe, Inc. v. General Services Admin., GSBCA No. 14211, 01-2 BCA ¶ 31,630 (Sept. 28, 2001) (board held that contractor was not prejudiced by contracting officer's failure to consult with SBA, pursuant to 48 C.F.R. 49.402-3(e)(4), prior to termination for default); Lafayette Coal Co., ASBCA No. 32174, 89-3 BCA ¶ 21,963 at 110,482 (May 9, 1989) ("Appellant seeks too much in

arguing that a failure to consider one or more of these factors necessitates conversion of a default termination into one for the convenience of the Government. Mere failure to consider one or more of these factors is not an automatic admission ticket to a termination for convenience. It is but one factor to consider in looking at the totality of the circumstances surrounding the contracting officer's actions.").

Moreover, there is precedent to support the proposition that a termination for default that was not only defective, but also unauthorized when issued does not extinguish the Government's right to terminate the contract for default at a later time. In Royal Lumber Co., Inc., ASBCA No. 2847, 1955 WL 9052 (Dec. 20, 1955), the Armed Services Board of Contract Appeals sustained a default termination, notwithstanding the fact that it had been preceded by an unauthorized and invalid termination action taken by the contracting officer's representative. The board held:

> [t]he contract expressly provided that the contracting officer's representative (COR) had no authority to "take any action under the provisions of the Default Article" and that "written Notice of Default to the Contractor" was essential to termination under that article. Therefore, the COR's letter of 1 October 1954, insofar as it purported to represent the ten-day notice under the "Default" article, and the attempt at termination by telephone on 14 October 1954 were nullities under the contract. And in the absence of proper ten-day notice, it cannot justifiably be held that appellant was in default as of the latter date. It follows that his reasons for terminating the contract for default, as stated by the contracting officer in his letter of 27 October 1954, were without sound basis and that the earliest date on which termination can be considered as having been put into effect is 27 October 1954, the date on which the attempt at termination was authoritatively ratified by the contracting officer. However, it is found that appellant was in default as of this date in that appellant failed to deliver by 22 October 1954, the contract delivery date, and that, as clearly indicated by the evidence, the aforementioned acts of the Government in no wise contributed to appellant's delinquent status. Termination of the contract for default as of 27 October

> 1954 was therefore proper and it is so held.

Id.

Royal Lumber supports the legality of the GSA's termination for default of Task Order 3 in this case. The ASBCA there sustained a contracting officer's "ratification" of an unauthorized termination for default. In fact, but for the COR's lack of authority to issue the required cure notice, the board would likely have concluded that the contracting officer's decision was effective as of October 14, 1954, instead of October 27, 1954. In this case, there is no similar cause for concern, as BearingPoint has never alleged, and this Court did not determine, that the DOI contracting officer lacked the authority to issue the August 23, 2005 cure notice relating to Task Order 3. Therefore, because, on September 29, 2005, there was no remaining procedural hurdle to a default termination, BearingPoint was "in default" on that date and, thus, was not prejudiced by the DOI's unauthorized termination notice.

It is precisely this lack of prejudice that distinguishes this case from International Tel. & Tel. Corp., ITT Defense Communication Division v. United States, 509 F.2d 541 (Ct. Cl. 1975), upon which BearingPoint relies. Pl. Br. 4. In International Tel. & Tel. Corp., the Court of Claims held that the Government's termination for default had to be converted to a termination for convenience because the Government had failed to follow a required termination procedure – i.e., issuance of a written cure notice at least ten days in advance of the termination for default – and that the contractor was prejudiced by that failure. The Court stated:

> Since plaintiff was neither given such notice, nor permitted to cure defects, it would seem that the Government raised the delivery question because of its failure to follow proper procedures after rejecting the ARLS system. If a showing had been made that this system was urgently needed by the Government and plaintiff was

> aware of this need, this failure might have been excusable. Under such circumstances, the Government's failure to follow strictly the default termination procedures might not be fatal. . . . Given the noncritical nature of the timing sequence, no excuse can be made for the Government's failure to follow proper procedures in its default attempts.

Id. at 554. Here, as noted above, BearingPoint was given a valid written cure notice. Therefore, International Tel. & Tel. Corp. does not support BearingPoint's argument.

BearingPoint primarily relies upon the Court's holding in Timberland Paving & Const. Co. v. United States, 8 Cl. Ct. 653 (1985), a case which, as the Court itself acknowledged, involved "strange and narrow facts." In that case, during a lengthy trial upon the merits, "the facts presented raised at least serious question whether, at the time he purported to act upon [plaintiffs's] claims, Mr. Powers was still the contracting officer for plaintiff's contract (or indeed a contracting officer at all)." Id. at 658. Apparently, Mr. Powers (a contracting officer in the Portland, Oregon office of the Bureau of Indian Affairs) had received plaintiff's CDA claims in December 1979, but, in January 1980 – before plaintiff's claims had been decided – Mr. Powers was transferred to Washington, D.C. to work for the agency in a different position. Although a different contracting officer had been assigned to the plaintiff's contract, the Portland area director, having decided that Mr. Powers should decide the plaintiff's claims and determine whether the contract should be terminated for default, made a request to Washington that Mr. Powers be re-designated to act as the contracting officer. The request was made on April 21, 1980 and was approved by the Acting Deputy Commissioner in Washington on April 25, 1980. Unfortunately, by then, Mr. Powers had already issued a termination notice that was dated April 23, 1980. Three days later, on April 28, 1980, the Acting Deputy Commissioner issued a mem-

orandum that purported to delegate to Mr. Powers contracting officer authority, "effective as of April 23, 1980" (the date of the termination notice).

The Court held that Mr. Powers's termination for default was a nullity because Mr. Powers was not the contracting officer when he issued the notice.[5] The Court also held that the decision could not be held to have been "ratified" by the Acting Deputy Commissioner because, despite having had an opportunity to do so, the Government did not present evidence that "establish[ed] either [the Acting Deputy Commissioner's] knowledge of the facts of the situation, or his actual intent in signing [the April 25 and 28 documents]. On this record, and all else aside, ratification has not been proven." Id. at 661.

Timberland does not support BearingPoint. At best, Timberland stands for the proposition that an unauthorized termination for default that is not subsequently ratified must be converted to a termination for convenience. See M.E.S., Inc., PSBCA No. 4462, 01-1 BCA ¶ 31,268 (Feb. 7, 2001) ("We need not decide the effect of Section 6.9.1.b on the authority of the contracting officer to terminate the contract because it is clear from the record that the decision was subsequently ratified by proper authority . . . . Appellant's reliance on Timberland Paving and Construction Co. v. United States, supra, for the proposition that an unauthorized termination for default may not be subsequently ratified is inapposite since the Claims Court therein found that defendant had failed to prove that a ratification had even occurred."). Here, regardless of whether the term "ratification" appropriately describes the action of the GSA contracting

---

[5] Although the Court recognized the jurisdictional issue that this holding raised, it determined that because the termination was inextricably intertwined with plaintiff's money claims – which were validly before the Court – "examination of the propriety of *both* actions is, in the strange and narrow facts and circumstances of this case, justified." Id. at 659 n.16.

officer in this situation – given that the ordering agency contracting officer and the GSA schedule contracting officer both have roles to play in terminating a contract pursuant to the I-FSS-249-B default clause – it is clear that the GSA contracting officer, who was authorized to consider BearingPoint's excuses, had thoroughly considered "the facts of the situation" before concluding that BearingPoint's excuses were not sufficient to avoid a termination for default. That two years elapsed before this happened is immaterial. Again, it should be noted that BearingPoint chose to wait almost an entire year before it challenged the DOI's action as being unauthorized. BearingPoint has not been prejudiced, and this Court should deny its motion for partial summary judgment.

B. The Court, In BearingPoint I, Did Not Hold That There Was An Improper Default Termination

BearingPoint argues that "[t]here can be no dispute that the Court, in concluding that the DOI contracting officer lacked authority to terminate Task Order 3 and the BPA, 'determined that the Government improperly terminated this contract for default[,]'" and that an improper termination for cause must be treated as a termination for convenience pursuant to FAR 52.212-4(M). Pl. Br. 5. This argument should be rejected as contrary to both fact and law, as, in BearingPoint I, this Court did not (and could not) consider the merits of the case or determine that there had been an improper default termination.

To start, BearingPoint's argument is belied by the plain language of the Court's conclusion in BearingPoint I, which stated:

> [t]he Court concludes that the default terminations were "jurisdictionally invalid," and shall be treated as legal nullities. Consequently, there are no terminations properly before the Court, and the Court is without jurisdiction to review the merits of this

> case. The BPA and Task Order 3 therefore still exist and remain in effect. The Clerk of the Court is directed to dismiss Plaintiff's Complaint without prejudice.

77 Fed. Cl. at 195 (internal citation omitted). Although that language was fairly clear, we filed a motion for clarification regarding the meaning of the statement that the "BPA and Task Order 3 therefore still exist and remain in effect." In its order in response to the motion for clarification, the Court stated: "this statement means only that the BPA and Task Order were not terminated through the affirmative actions of an authorized Government contracting officer. The Court's Order and Opinion does not extend to any issue regarding the merits of whether the BPA and Task Order 3 are still in effect or may have expired for some other reason." Pl. Ex. 6. Given the language of the Court's orders, there should be no dispute that the Court did not determine that the Government improperly terminated for default Task Order 3. Rather, the Court held that the Government did not terminate the contract at all. Subsequently, the Government did terminate for default Task Order 3, and the Court has not held that the actual termination for default was improper.

Moreover, as we established in our motion for reconsideration in BearingPoint I, the Court, having determined that it lacked subject matter jurisdiction, could not have decided any merits issues. See, e.g., Mothers Restaurant, Inc. v. Mama's Pizza, Inc., 723 F.2d 1566, 1571 (Fed. Cir. 1983) ("In order to give preclusive effect to a particular finding in a prior case, that finding must have been necessary to the judgment rendered in the previous action."); International Electronic Technology Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007) ("Without jurisdiction, courts would be rendering advisory opinions.").

This Court should reject BearingPoint's argument that the Court had previously decided

that the Government had improperly terminated the contract.

## III. BearingPoint's Claim For A Declaratory Judgment Regarding The Purported Termination Of The BPA Was Rendered Moot By The GSA Contracting Officer's Final Decision

BearingPoint argues that "[s]ummary judgment is warranted on Count X of BearingPoint First Amended Complaint, which seeks a declaratory judgment that DOI's improper termination of the BPA was without legal effect." Pl. Br. 7. This argument should be rejected.

First, as we established above, BearingPoint's argument that there was an "improper" termination is contrary to the Court's holding, in BearingPoint I, that the BPA had never been terminated (for any reason). As the BPA was never terminated, it follows that it could not have been "improperly" terminated. Therefore, BearingPoint's argument that it is entitled to a conversion of a non-existent default termination of the BPA into a termination for convenience makes no sense whatsoever.

Similarly, to the extent that BearingPoint requests a declaratory judgment that the DOI's termination of the BPA "was without legal effect" (see First Amended Complaint at ¶ 288), BearingPoint is not entitled to such relief because, in BearingPoint I, the Court has already made that precise holding. In fact, although the Court did not decide any merits questions in BearingPoint I, the Court's holding that the DOI did not terminate Task Order 3 or the BPA (that is, that the terminations were nullities) was necessary to the jurisdictional dismissal, and, as such, is binding pursuant to the doctrine of collateral estoppel. See, e.g., Roth v. McAllister Bros., Inc., 316 F.2d 143, 145 (2nd Cir. 1963) ("For a tribunal always possesses jurisdiction to determine its jurisdiction, and any fact upon which that decision is grounded may serve as the

basis for an estoppel by judgment in any later action.").[6]

Finally, at this point, BearingPoint's request for a declaratory judgment regarding the BPA is moot because the GSA contracting officer concluded that the BPA was not a contract that could be terminated, and, thus, that the DOI's attempt to terminate the BPA was a nullity (albeit for a reason not related to the authority of the DOI contracting officer). Pl. Ex. 7. "A case becomes moot 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" CW Government Travel, Inc. v. United States, 46 Fed. Cl. 554, 557 (2000) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)) (dismissing bid protest as moot due to the Government's cancellation of the solicitation). Here, the issue of whether the BPA could be terminated for default is no longer "live" because the Government never terminated the BPA for default and it does not intend to do so.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny BearingPoint's motion for partial summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

---

[6] Arguably, BearingPoint is also judicially estopped from arguing that the DOI improperly terminated the BPA. E.g., Wagner v. Professional Engineers in California Government, 354 F.3d 1036, 1044 (9th Cir. 2004) (Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position."). BearingPoint's earlier position that the DOI's contracting officer decisions were "nullities" is incompatible with its current position that the DOI terminated the BPA.

/s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

OF COUNSEL:

JAMES L. WEINER
EMILY E. PARKHURST
Office of the Solicitor
Department of the Interior

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6462
Fax: (202) 514-7969

Attorneys for Defendant

February 14, 2008

CERTIFICATE OF FILING

I hereby certify that on February 14, 2008, a copy of "DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Franklin E. White Jr.
FRANKLIN E. WHITE, JR.