# In the United States Court of Federal Claims

No. 07-631C

(Filed: May 28, 2008)

| | |
|---|---|
| ******************************************* * | |
| BEARINGPOINT, INC., Plaintiff, | Multiple Award Schedule Contract; Unauthorized Default Termination of Task Order; Procedural Error; Existence of Harm or Prejudice to Contractor; Availability of Summary Judgment. |
| v. | |
| THE UNITED STATES, Defendant. | |
| ******************************************* * | |

*Jonathan S. Aronie*, with whom were *Louis D. Victorino, Christopher M. Loveland, Keith R. Szeliga,* and *Marko W. Kipa*, Sheppard Mullin Richter & Hampton LLP, Washington, D.C., for Plaintiff.

*Franklin E. White, Jr,*, with whom were *Jeffrey S. Bucholtz*, Acting Assistant Attorney General, and *Jeanne E. Davidson*, Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *James L. Weiner* and *Emily E. Parkhurst*, Department of Interior, Of Counsel, for Defendant.

**OPINION AND ORDER ON PLAINTIFF'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

WHEELER, Judge.

Background

This case is before the Court on Plaintiff's motion for partial summary judgment pursuant to Rule 56. BearingPoint, Inc. ("BearingPoint") holds a Multiple Award Schedule contract with the General Services Administration ("GSA") to provide information technology and system integration services to federal agencies. Under this contract, the Department of Interior ("DOI") awarded BearingPoint a Blanket Purchase Agreement ("BPA") and various task orders. DOI's Contracting Officer purported to terminate Task Order 3 and the BPA for default on September 29, 2005, and October 27, 2005, respectively. BearingPoint challenged the default terminations in this Court,

claiming that the wrong agency had issued the terminations. In an April 30, 2007 decision, the Court ruled that, under the applicable contract provisions, only GSA's Contracting Officer had authority to issue default terminations where BearingPoint alleged excusable delay as a defense. BearingPoint, Inc. v. United States, 77 Fed. Cl. 189 (2007). The Court granted BearingPoint's motion to dismiss for lack of subject matter jurisdiction, finding that DOI's Contracting Officer lacked authority to issue the default notices, and that the notices were to "be treated as a legal nullity." Id. at 190. The facts and contract clauses leading to this conclusion were detailed in the Court's earlier decision.

BearingPoint filed a new action in this Court on August 24, 2007. In count one of its complaint, BearingPoint sought a declaratory judgment that the unauthorized DOI default terminations should be converted to terminations for convenience. BearingPoint relied upon the commercial items "termination for cause" provision in its GSA contract, which states "[i]f it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience." Federal Acquisition Regulation ("FAR") § 52.212-4(m).

On November 9, 2007, the Court granted Defendant's motion to stay proceedings and remanded to GSA to obtain a Contracting Officer's final decision. See RCFC 52.2; 41 U.S.C. § 605(c)(5). GSA's Contracting Officer issued a final decision on December 19, 2007, after which BearingPoint filed an amended complaint. The GSA Contracting Officer determined that the default termination of the DOI task order was justified, and that BearingPoint was not entitled to any relief on its July 28, 2006 certified claim.

On January 14, 2008, BearingPoint filed its motion for partial summary judgment, asserting that "a procedurally defective, unauthorized termination for default results in a termination for convenience." Pl.'s Motion at 4 (citing Int'l Tel. & Tel. Corp., ITT Def. Comm. Div. v. United States, 206 Ct. Cl. 37, 509 F.2d 541 (1975); Timberland Paving & Constr. Co. v. United States, 8 Cl. Ct. 653 (1985)). Defendant opposed BearingPoint's motion on February 14, 2008, arguing that material facts are in dispute, and that DOI's issuance of the unauthorized default notice did not extinguish the Government's right through GSA's Contracting Officer to terminate the task order for default where adequate cause existed. Defendant cited cases holding that harmless technical defects in an otherwise proper default termination do not require automatic conversion to a termination for convenience. See, e.g., State of Fla., Dep't of Ins. v. United States, 81 F.3d 1093, 1098 (Fed. Cir. 1996); DCX, Inc. v. Perry, 79 F.3d 132, 135 (Fed. Cir. 1996); Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996); Philadelphia Regent Builders, Inc. v. United States, 225 Ct. Cl. 234, 634 F.2d 569, 572 (1980). BearingPoint filed a reply on March 3, 2008, and the Court heard oral argument on March 20, 2008.

The issue presented by BearingPoint's motion is whether the unauthorized DOI default termination requires automatic conversion to a termination for convenience by operation of law. The Court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a), and the Contract Disputes Act, 41 U.S.C. § 609(a).

## Discussion

### A. Standard of Review

Summary judgment is appropriate under Rule 56(c) if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986); Atwood-Leisman v. United States, 72 Fed. Cl. 142, 147 (2006). The burden of establishing that no genuine issue of material fact exists rests with the moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). An issue is "genuine" only if it "may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. at 248. In considering the existence of a genuine issue of material fact, a court must draw all inferences in the light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. Liberty Lobby, 477 U.S. at 248; see also Eli Lilly and Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir. 2001). Where the facts are not in dispute, the moving party still must show that it is entitled to judgment as a matter of law. See Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997).

### B. Analysis of Default Termination Issues

A default termination "is a drastic sanction," and the Government is held strictly accountable for its actions in enforcing this sanction. Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 765 (Fed. Cir. 1987) (citing J.D. Hedin Constr. Co. v. United States, 187 Ct. Cl. 45, 408 F.2d 424, 431 (1969); Schlesinger v. United States, 182 Ct. Cl. 571, 390 F.2d 702, 709 (1968)). See also H.N. Bailey & Assocs. v. United States, 196 Ct. Cl. 156, 449 F.2d 387, 391 (1971) (same). In challenging default terminations, contractors typically contend that: (1) a procedural error renders the default unenforceable; or (2) considering the merits of performance, the contractor either was not in default, or its performance deficiencies were excusable. Extensive regulations describe the factors to be considered and the procedures to be followed in terminating a contract for default. See FAR Subpart 49.4, "Termination for Default." But see FAR § 12.403, "Termination" (stating that the requirements of Part 49 "do not apply when terminating contracts for commercial items," but may be used as "guidance to the extent that Part 49 does not conflict with this section.").

When a contractor such as BearingPoint challenges a default termination on the basis of procedural errors, the contractor must show the existence of harm or prejudice that it suffered due to the Government's error. In some instances, the harm or prejudice to the contractor is readily apparent, and the default termination is converted to a termination for convenience. Int'l Tel. & Tel. Corp., ITT Def. Comm. Div. v. United States, 206 Ct. Cl. 37, 509 F.2d 541 (1975) (Government's failure to issue required cure notice prevented contractor from curing defects); DeVito v. United States, 188 Ct. Cl. 979, 413 F.2d 1147 (1969) (Government waived delivery schedule by failing to terminate within reasonable time, where contractor continued performance in reliance upon

Government's waiver). In other cases, the procedural errors are regarded as harmless technical defects. State of Fla., Dep't of Ins. v. United States, 81 F.3d 1093, 1098 (Fed. Cir. 1996) (failure to include appeal rights in default notice found to be harmless error); DCX, Inc. v. Perry, 79 F.3d 132, 135 (Fed. Cir. 1996) ("[C]ontracting Officer's failure to consider one or more of the [FAR] section 49.402-3(f) factors does not require that a default termination be converted into a termination for the convenience of the government."); Decker & Co. v. West, 76 F.3d 1573, 1579 (Fed. Cir. 1996) ("[H]arm should accompany a defect in an otherwise proper termination notice in order for the contractor to seek relief based on that defect."); Philadelphia Regent Builders, Inc. v. United States, 225 Ct. Cl. 234, 634 F.2d 569, 572 (1980) (default notice lacking proper contract number and date, failing to state that the notice constituted a decision under the Disputes clause, and the lack of a contracting officer signature, found to be harmless technical defects).

In the present case, BearingPoint did not make any showing of harm or prejudice in its motion for partial summary judgment. BearingPoint argued simply that DOI's unauthorized default termination should be regarded as "improper" under FAR § 52.212-4(m), resulting in automatic conversion to a termination for convenience. BearingPoint's proposed findings of uncontroverted facts accompanying the motion similarly did not include any facts showing harm or prejudice. When Defendant asserted in its response to the motion that BearingPoint failed to demonstrate any harm or prejudice, BearingPoint then included the following "prejudice" arguments in its reply: (1) by delaying more than two years before GSA issued its final decision, the Government significantly extended the period for which BearingPoint must disclose the default terminations in responding to any new solicitations; (2) the two-year delay had a negative impact on BearingPoint's ability to prepare for and present its defenses to the terminations; and (3) BearingPoint could not, and did not, receive fair consideration of its excusable delay defenses from GSA where DOI already had terminated Task Order 3 and ended BearingPoint's performance. Pl.'s Reply at 9-11. See also Oral Arg., Mar 20, 2008 at 9-17.

BearingPoint ultimately may be able to show that it suffered harm or prejudice from the unauthorized DOI default notice and the two-year delay in receiving GSA's final decision. Apparently, despite an unauthorized DOI default termination, DOI immediately treated Task Order 3 and the BPA as being terminated in September or October 2005, and made arrangements to retain a new contractor. Oral Arg., Mar. 20, 2008 at 7-10, 37, 40, 47. Presumably, DOI did not place any new orders with BearingPoint after the unauthorized termination, and did not allow any existing work to continue. Other than the unauthorized default, the Court has no evidence of any official agency correspondence notifying BearingPoint of the status of Task Order 3 or the BPA. Even after the Court's April 30, 2007 ruling that DOI's Contracting Officer lacked authority, it took the filing of a new action by BearingPoint and a remand order from the Court before GSA issued any decision.

At this stage, however, the Court does not have a sufficient record to rule in BearingPoint's favor. The Court has heard counsel's arguments of harm and prejudice, but it does not have any facts upon which to draw the conclusions that BearingPoint advances. As an example, BearingPoint complains of having to disclose the default terminations for a longer period than normal in responding to new solicitations for other federal agency work. This argument indeed may be

plausible, but the Court lacks any evidence of the solicitation responses where BearingPoint made such disclosures, the specific nature of the disclosures that BearingPoint made, or whether BearingPoint lost any work or was downgraded in some respect during the agency evaluation process. To prevail in its showing of harm or prejudice, BearingPoint must provide concrete evidence, and cannot rely simply on arguments that may be plausible.

BearingPoint contends that this inquiry into harm or prejudice is unnecessary because DOI's unauthorized default notice constituted an "improper" default within the meaning of the commercial items "termination for cause" provision of its contract, resulting in an automatic conversion to a termination for convenience. See FAR § 52.212-4(m). The Court does not agree. The word "improper" logically embraces a determination on the merits of the default termination that the Court did not reach in dismissing BearingPoint's first action for lack of jurisdiction, BearingPoint, 77 Fed. Cl. 189, or a procedural error where the defaulted contractor has shown harm or prejudice resulting from the error. BearingPoint, however, has failed to present uncontroverted facts demonstrating that it would prevail on the merits of the default termination, or that it suffered prejudice resulting from the procedurally defective termination. Consequently, BearingPoint has not established by its motion that the DOI default was "improper" for purposes of converting the default to a termination for convenience.

BearingPoint cites Timberland Paving & Construction Co. v. United States, 8 Cl. Ct. 653 (1985), in support of its motion. The Court agrees that Timberland is factually similar to BearingPoint's case, but nevertheless finds it distinguishable. In Timberland, the Court determined after a trial on the merits that the person who issued a default termination was not the contracting officer at the time of the notice, and therefore that the default notice was unauthorized. 8 Cl. Ct. at 658-59. As here, the Court ruled that the default termination was a nullity, but it retained jurisdiction because plaintiff's money claims were intertwined with the unauthorized default. Id. at 659 n.16. Timberland, however, did not involve a subsequent final decision by an authorized contracting officer. Under those circumstances, described as "strange and narrow," the Court converted the unauthorized default termination to a termination for convenience. Id. Here, of course, there has been no trial on the merits, and a GSA Contracting Officer has issued a final decision following DOI's default termination of the task order.

In weighing potential outcomes, it is possible that a constructive termination for convenience may have occurred, or that DOI or GSA breached the contract in failing to provide any timely notice to BearingPoint after treating the Task Order 3 as ended. See Linan-Faye Constr. Co. v. Housing Auth. Of Camden, 49 F.3d 915, 923 (3rd Cir. 1995) (citing Maxima Corp. v. United States, 847 F.2d 1549 (Fed. Cir. 1988)); Scott Timber Co. v. United States, 64 Fed. Cl. 130, 142 (2005); Best Foam Fabricators, Inc. v. United States, 38 Fed. Cl. 627, 638 (1997). See also, Cibinic, Nash & Nagle, Administration of Government Contracts at 1073 (4th ed. 2006) (describing constructive termination as a judicial construct that "insulates the government from breach damages" in situations "when a breach might otherwise result"). As with the issue of harm or prejudice, however, the Court does not have sufficient facts before it to support a finding of constructive termination or breach. A fuller record will allow the Court to determine the proper resolution.

Conclusion

For the foregoing reasons, Plaintiff's motion for partial summary judgment is DENIED. By motion dated April 16, 2008, Defendant requested the Court to reschedule the Joint Preliminary Status Report ("JPSR") to a date after a ruling on Plaintiff's motion for partial summary judgment. Defendant's motion is GRANTED, and the Court directs the parties to submit their JPSR within 20 days from the date of this Order, on or before June 17, 2008. Following receipt of the JPSR, the Court will set a preliminary scheduling conference with counsel, pursuant to Appendix A, paragraph 7 of the Court's Rules.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge