IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BEARINGPOINT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07-631C |
| v. | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to section III of Appendix A, Rules of the United States Court of Federal Claims, the parties respectfully submit the following joint preliminary status report:

**A. Does The Court Have Jurisdiction Over The Action**

Plaintiff believes that this Court possesses jurisdiction to entertain this action pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 601-613. Defendant is currently unaware of any reason why this Court would lack subject matter jurisdiction to entertain plaintiff's complaint.

**B. Should The Case Be Consolidated With Any Other Case**

Neither party is aware of any case with which this case should be consolidated.

**C. Should Trial Of Liability And Damages Be Bifurcated**

Assuming the case is tried, the parties are not currently aware of any reason that the trial should be bifurcated.

**D. Should Further Proceeding Be Deferred Pending Consideration Of Another Case**

The parties are not currently aware of any reason why proceedings in this case should be deferred pending consideration of another case before this Court or any other tribunal. The parties are not aware of any related cases in this or any other tribunal.

**E. Will A Remand Or Suspension Be Sought**

Neither party presently anticipates seeking a remand or suspension.

**F. Will Additional Parties Be Joined**

At this time, neither party anticipates joining any additional parties.

**G. Does Either Party Intend To File A Motion Pursuant To RCFC 12(b), 12(c) or 56**

On May 28, 2008, the Court denied plaintiff's motion for partial summary judgment. The parties anticipate that subsequent Rule 56 motions will be filed prior to or after the completion of discovery. Defendant has not yet determined whether it will file a motion pursuant to RCFC 12(b)(6) in connection with certain elements of plaintiff's complaint.

**H. What Are The Relevant Issues**

**Plaintiff's Position**

BearingPoint's First Amended Complaint alleges that, throughout 2004 and 2005, the Department of Interior ("DOI") took actions that delayed and/or prevented BearingPoint's performance of software implementation and other related services in connection with a Department-wide enterprise resource planning ("ERP") software package to be-known as the Financial and Business Management System ("FBMS"). Ultimately, DOI purported to terminate for cause BearingPoint's Blanket Purchase Agreement No. 73873 (the "BPA") and Task Order 3 (Order No. 0404D037408) under the BPA.

Task Order 3 required BearingPoint to implement FBMS functionality at three DOI Bureaus. Because the BPA left open design decisions antecedent to implementation of the FBMS, and due to the complex subject matter of the procurement, cooperation between the parties was essential to successful performance. Notwithstanding this heightened need for

cooperation, DOI consistently failed to make critical design and other decisions in a timely manner, to provide indispensable information and resources within its exclusive control, and to make available personnel and facilities in accordance with its express contractual requirements. DOI's conduct in this regard delayed the work under Task Order 3 and caused BearingPoint to incur significant additional costs for which the company never received compensation.

In spite of DOI's failure to perform its obligations, on August 23, 2005, DOI issued a cure notice for Task Order 3. BearingPoint timely replied and specifically asserted excusable delay, as well as other defenses. Notwithstanding BearingPoint's rebuttal and reliance on a claim of excusable delay, and contrary to its express obligation to refer the issue to BearingPoint's GSA Schedule 70 Contracting Officer, DOI issued a notice terminating Task Order 3 for cause. In addition, DOI ordered that BearingPoint promptly leave the DOI premises and denied the company access to the work site. DOI also ordered that BearingPoint deliver all work in progress, which order BearingPoint promptly obeyed.

DOI subsequently issued a cure notice regarding the BPA on October 20, 2005, notwithstanding the fact that applicable regulations and law expressly provide that a BPA is not a

"contract" subject to termination. DOI allowed BearingPoint only five days to respond to the cure notice, an unreasonably short period of time. Notwithstanding the issuance of the cure notice, DOI had already publicized its intent to re-solicit offers for the FBMS program from other vendors. BearingPoint also had already been "kicked-off" the job site and barred from reentry.

Ignoring BearingPoint's request for additional time to respond, DOl issued a notice

terminating the BPA for cause on October 27, 2005. The BPA Termination Notice, designated as the DOI Contracting Officer's Final Decision, did not indicate that DOI had referred the issue of excusable delay to BearingPoint's GSA Schedule 70 Contracting Officer.

BearingPoint appealed the DOl Contracting Officer's purported Final Decisions terminating for cause Task Order 3 and the BPA to the Court of Federal Claims on September 26, 2006. Based on the absence of a valid Contracting Officer's decision with respect to both terminations, BearingPoint filed a motion to dismiss its own Complaint under RCFC l2(b)(1) on January 19, 2007. The Court granted BearingPoint's motion, holding that the purported terminations of Task Order 3 and the BPA were (1) "jurisdictionally invalid" and (2) to be "treated as 'legal nullities.'" At no time since the Court issued its ruling has DOI requested that BearingPoint resume work on the FBMS project.

BearingPoint's Amended Complaint raises, *inter alia*, the following legal and factual Issues:

A) Whether DOI's Final Decision should be converted to a termination for convenience;

B) Whether DOI's failure to comply with its express contractual duties to refer any assertion of excusable delay to BearingPoint's GSA Schedule 70 Contracting Officer converted the terminations for cause of the BPA and Task Order 3 into terminations for the convenience of the Government;

C) Whether the Contracting Officer breached, or in the alternative, constructively changed, Task Order 3 by directing BearingPoint to perform without a valid contract in place;

D) Whether the Contracting Officer breached, or in the alternative, constructively changed, Task Order 3 by directing BearingPoint to perform added and changed work;

E) Whether DOI's failure to comply with its express contractual duties to refer any assertion of excusable delay to BearingPoint's GSA Schedule 70 Contracting Officer was a breach of Task Order 3;

F) Whether DOI materially breached its duty to cooperate and not hinder BearingPoint's performance of Task Order 3 when it directed BearingPoint to stop work and exit the project facilities;

G) Whether BearingPoint's failure to make progress under Task Order 3 was excusable because DOI significantly delayed the overall completion of Task Order 3 by, among other things:

i) Failing to approve and make timely decisions regarding BearingPoint's FDSs for interfaces and data conversion;

ii) Requiring BearingPoint to meet data conversion, interface, and other requirements outside the scope of the BPA and Task Order 3;

iii) Failing to approve and make timely decisions regarding BearingPoint's proposed system requirements;

iv) Failing to timely approve and fund BearingPoint's White Papers;

v) Requiring BearingPoint to perform testing at multiple locations;

vi) Failing to provide BearingPoint personnel with adequate facilities;

vii) Failing to adequately staff the FBMS project, including the failure to provide contractually required Subject Matter Experts and other technical experts;

viii) Failing to timely provide information necessary for performance;

ix) Failing to make a timely decision regarding hosting; and

x) Permitting Titan to interfere with BearingPoint's performance;

H) Whether DOI waived the delivery schedule for Task Order 3 because, among other things, it knew or should have known that BearingPoint would be unable to meet that schedule as early as December 2005, had actual knowledge of BearingPoint's inability to meet the delivery schedule by no later than early May 2005, and failed to timely take termination for default action;

I) Whether DOI's termination of Task Order 3 was improper because BearingPoint fully complied with all requirements applicable to Task Order 3, including those related to project control reporting and quality assurance;

J) Whether BearingPoint is entitled to an equitable adjustment or breach damages of $5,038,000, or any other amount, to compensate it for added and changed work ordered by DOI;

K) Whether BearingPoint is entitled to $16,522,063 or $19,842,777, or any other amount, as a termination for convenience settlement or as a result of DOI breaches of Task Order 3;

L) Whether DOI breached its implied duty under Task Order 3 to cooperate with BearingPoint and to refrain from taking any actions that would delay, hinder, or otherwise interfere with the company's performance.

M) Whether it would be inequitable for DOI to retain the benefit of contract work performed by BearingPoint, including work-in-progress under Task Order 3, without rendering payment to BearingPoint;

N) Whether DOI lacked the ability to terminate the BPA for cause because the BPA was not a binding contract;

O) Whether, if the BPA is a contract, DOI's direction to stop work and exit the project facilities unreasonably interfered with BearingPoint's perfonnance of the BPA by rendering it impossible for BearingPoint to continue work on the remaining deployments;

P) Whether, if the BPA is a contract, DOI's conduct was in breach of the BPA;

Q) Whether the purported Final Decision of the GSA Contracting Officer was erroneous, improper, and not in accordance with law;

R) Whether, alternatively, the January 16, 2007 purported Final Decision of the DOI Contracting Officer was erroneous, improper, and not in accordance with law?

In its Answer, the United States has denied that BearingPoint is entitled to relief, and has raised the following issue:

A) Whether DOI has an affirmative defense to one or more of BearingPoint's claims pursuant to payment, waiver and/or collateral estoppel?

**<u>Defendant's Position</u>**

Defendant objects to plaintiff's identification of the relevant issues to the extent those issues are preceded by two pages of argument, which is neither requested nor authorized by Appendix A. Based upon its current review of the case, and without the benefit of discovery, defendant believes that the relevant factual and legal issues are as follows:

1. Whether Task Order 3 was terminated for default on December 19, 2007, through a contracting officer's final decision issued by the GSA.

2. Assuming that Task Order 3 was terminated for default on December 19, 2007, through the GSA contracting officer's final decision, whether the termination for default should be converted to a termination for the convenience of the Government due to the procedural irregularities relating to the unauthorized termination notice that was issued by the DOI in 2005, which allegedly prejudiced BearingPoint.

3. Assuming that Task Order 3 was terminated for default on December 19, 2007, through a GSA contracting officer's final decision that would not be subject to conversion to a termination for convenience based upon the procedural irregularities relating to the unauthorized termination notice issued by the Department of the Interior in 2005, whether BearingPoint was "in default" of Task Order 3 (based upon the reasons stated in the GSA's December 19, 2007 final decision and/or for any other reasons) at the time the original, unauthorized, termination notice was issued by the DOI.

4. Assuming that BearingPoint was "in default" of Task Order 3 at the time of the original, unauthorized, termination notice issued by the DOI, whether BearingPoint's default was excused because the DOI had allegedly waived the right to terminate for default and/or for other reasons relating to DOI actions/inactions in administering Task Order 3.

5. Was BearingPoint properly compensated for work that was accepted by the United States in connection with Task Order 3 and/or is BearingPoint entitled to additional compensation for work that was not accepted by the United States in connection with Task Order 3.

6. Did the United States terminate for default the BPA; if so, was the termination for default of the BPA improper, and is BearingPoint entitled to any relief.

7. Was BearingPoint properly compensated for work that had been accepted by the United States in connection with the BPA that was not related to Task Order 3 and/or is BearingPoint entitled to additional compensation for work that was not accepted by the United States in connection with BPA work that was not related to Task Order 3.

8. Is BearingPoint entitled to damages, and if so, to what amount of damages is BearingPoint entitled.

9. Whether BearingPoint's claims are barred, in whole or in part, by payment.

10. Whether BearingPoint's claims are barred, in whole or in part, by waiver.

11. Whether BearingPoint's claims are barred, in whole or in part, by collateral estoppel.

## I. **What Is The Likelihood Of Settlement? Is Alternative Dispute Resolution Contemplated?**

BearingPoint and the DOI had engaged in settlement discussions prior to the filing of BearingPoint's complaint in case no. 06-675C, but were unable to reach a mutually acceptable agreement. The parties have not yet engaged in settlement discussions in connection with BearingPoint's amended complaint in this action, and are agreed that they cannot at this time predict the likelihood of settlement. Although the parties are agreed that any form of non-binding ADR would not be helpful at this time, during the course of discovery the parties will continue to evaluate whether ADR would be useful, and will advise the Court should they jointly decide to pursue ADR.

## J. **Do The Parties Anticipate Proceeding To Trial**

In the absence of a settlement or disposition of the case through pre-trial motions, the parties anticipate proceeding to trial. No party requests expedited trial scheduling. The parties

request that trial be held in Washington, D.C.

**K. Is There Any Other Information Of Which The Court Should Be Aware**

**Plaintiff's Position**

Yes. Over several years, including 2004, the United States District Court Judge in Cobell, et al. v. Kempthorne, et al., C.A. No. 96-1285, ordered that the Department of Interior disconnect a large number of its employees from the Internet. It is BearingPoint's understanding that, as a result, a number of DOI employees also did not have email access during the time of the FBMS project, and instead relied on personal email accounts. It is critically important that all relevant emails be preserved in this case, including any relevant emails and documents in the personal email accounts and files of DOI personnel. All personal email accounts of DOI employees involved in the FBMS project must be identified and searched for documents responsive to BearingPoint's discovery requests.

**Defendant's Position**

No.

Notwithstanding that no party has yet even filed a discovery request, BearingPoint believes that the Court needs information regarding the Department of the Interior's e-mail preservation policies. The Department of the Interior does not maintain an electronic archive of its employees' e-mail messages. Consistent with Federal regulations, DOI uses a paper record-keeping system for e-mail, see 36 C.F.R. § 1234.24(d), whereby employees print and file hard copies of e-mail messages that warrant preservation under the Federal Records Act ("FRA"), 44 U.S.C. § 3301. Once they are printed, the hard copies of the e-mail messages are filed and managed along with DOI's other paper records. This includes e-mail messages that are

sent or received using an employee's personal account. If the e-mail messages warrant preservation under the FRA, employees are required to print them in hard copy and file them in the appropriate subject matter files. These paper records are not preserved indefinitely as they are retained for whatever period of time is specified in our record schedules.

Beginning in October 2005, DOI advised its employees to preserve all e-mail relevant to this matter (regardless of whether the e-mails warrant preservation as a Federal record), including e-mail sent or received from their personal e-mail accounts.

PROPOSED DISCOVERY PLAN

The parties propose the following discovery plan:

a) Deadline for completion of fact discovery – March 1, 2009

b) Deadline for disclosure of expert reports – May 1, 2009

c) Deadline for completion of expert discovery – July 1, 2009

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

/s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

/s/ Jonathan S. Aronie
Jonathan S. Aronie
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP
1300 I Street, NW
11th Floor, East
Washington, DC 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Attorney for BearingPoint, Inc.

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6462
Fax: (202) 514-7969

Attorneys for Defendant

OF COUNSEL:

Louis D. Victorino
Christopher M. Loveland
Marko W. Kipa
Keith R. Szeliga
SHEPPARD MULLIN RICHTER &
HAMPTON, LLP

Domingo Maradiegue
BEARINGPOINT, INC.

OF COUNSEL:

James L. Weiner
Emily E. Parkhurst
Office of the Solicitor
Department of the Interior

June 17, 2008

CERTIFICATE OF FILING

I hereby certify that on June 17, 2008, a copy of "JOINT PRELIMINARY STATUS REPORT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Franklin E. White Jr.

FRANKLIN E. WHITE, JR.